For the reasons assigned, the judgment appealed from is affirmed.

ST. PAUL, J., absent.

## UNITED GAS PUBLIC SERVICE CO. v. EATON et al. *

### No. 4782.

Court of Appeal of Louisiana. Second Circuit.

March 29, 1934.

---

*Rehearing denied May 4, 1934.

Melvin F. Johnson, C. B. Prothro, Bryan E. Bush, John B. Files, and Nash Johnson, all of Shreveport, for appellants.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellee.

TALIAFERRO, Judge.

The primary question involved in this case, and submitted for decision on an agreed statement of facts, is: To whom shall rentals and royalties from a producing gas well on the S. E. ¼ of S. W. ¼, section 27, township 23 north, range 16 west, in Caddo parish, be paid?

On December 27, 1928, J. J. Emmons, J. D. Eaton, and B. E. Young executed to D. L. Perkins a regular commercial mineral lease (Bath Form No. 10) on the S. ½ of S. W. ¼, section 27, township 23 north, range 16 west. The lease was for a term of three years, and as long thereafter as oil or gas was produced therefrom. Among the obligations assumed by the lessee are these:

To pay to lessors $200 each year for each well producing gas only, until such time as the gas shall be utilized or sold off the leased premises, at which time payment of this royalty shall cease, and thereafter the lessors shall receive one-eighth of the value of such gas, based on the market price.

At the date of this lease, the ownership of said 80-acre tract, disclosed by the public records, was as follows:

1. B. E. Young owned one-half of all the minerals;

2. J. J. Emmons owned the S. W. ¼ of S. W. ¼ thereof and one-half of the mineral rights thereto;

3. J. D. Eaton owned the S. E. ¼ of S. W. ¼ thereof and one-half of the mineral rights thereto.

The rights of D. L. Perkins under said mineral lease are now owned by the United Gas Public Service Company, plaintiff herein, and the producing gas well on the east 40 of said tract was brought in by it during the primary term of the lease.

In the statement of facts submitted as evidence in the case, it is admitted that Eaton

transferred to Winfred Herrsher one-fourth of the minerals under the S. E. ¼ of S. W. ¼, and Herrsher transferred one-eighth of the minerals under that 40 to J. S. Slack and Conway Stroud, and transferred the other one-eighth owned by him to J. K. Wadley and Mrs. Alma B. Brown; and thereafter Eaton transferred one-eighth of the minerals under said 40 to C. B. Prothro and Prothro transferred one-sixteenth of such minerals to J. B. Mobley, and thereafter to Bryan E. Bush, 1/32 of said minerals.

Emmons transferred to J. W. Mobley one-fourth of the minerals under the S. W. ¼ of S. W. ¼ of said section, and thereafter Mobley transferred to C. B. Prothro and Bryan E. Bush one-eighth of said minerals under said 40.

On the face of these transfers, when this suit was tried, the ownership of the royalty accruing to Eaton and Emmons respectively under the lease to Perkins, it is conceded by all concerned, except Slack and Stroud, was vested as follows:

S. W. ¼ of S. W. ¼:
J. J. Emmons, 4/16
J. W. Mobley, 2/16
C. B. Prothro, 1/16
Bryan E. Bush, 1/16

S. E. ¼ of S. W. ¼:
J. D. Eaton, 4/32
J. K. Wadley, 2/32
J. W. Mobley, 2/32
C. B. Prothro, 1/32
Bryan E. Bush, 1/32
Alma B. Brown, 2/32
J. S. Slack, 2/32
Conway Stroud, 2/32

Before institution of the present suit, an adverse claim arose as to an undivided half interest in said tract of land, and a petitory action was instituted by the claimant, George Frank Margetich, against J. J. Emmons et al., in the district court of Caddo parish, which was finally decided by the Supreme Court in favor of the defendants, and the alleged interest of Margetich and assignees passed out of the controversy. 178 La. 159, 151 So. 65. Margetich and his assignees gave a mineral lease on said land, so far as their interest therein was concerned, to R. W. Norton, and plaintiff acquired the rights of Norton thereunder.

While the Margetich Case was pending, plaintiff herein, availing itself of the provisions of Act No. 123 of 1922, brought this interpleader suit, making each and every person who, according to the records, had a real or apparent interest in the mineral or surface rights to said land, parties thereto.

It is alleged that during the primary term of said lease, plaintiff drilled and brought in a well producing natural gas in paying quantities, 1,337 feet east and 660 feet north of the southwest corner of section 27, which locates said well 17 feet east of the west boundary line of the S. E. ¼ of S. W. ¼ of that section; that because of the controversy over the title to one-half interest in said land, involved in the Margetich suit, it could not determine the proper parties to whom to pay rentals and royalties due under the terms of the leases held by it on the land; that no dispute existed as to the other one-half of said rentals and royalties (that accruing to B. E. Young and his assignees); and that same had been paid to the owners thereof.

In keeping with prayer to that effect, the court authorized plaintiff to deposit in the registry of the court the rental fund then in its hands, ownership of which was in controversy, and in like manner to make further deposits of the rentals and/or royalties due under said mineral leases as the same from time to time accrued. The various persons named in the petition as claiming an interest in said rental and royalty fund were ordered cited to appear and make such claim thereto as they desired. This suit was filed October 3, 1931. J. K. Wadley, Alma B. Brown, J. S. Slack, and Conway Stroud promptly answered and denied that Margetich, or any one holding under deed or transfer from him, had any legal interest in said lands or the mineral rights therein. Other defenses were urged against Margetich's title. Margetich and those parties holding under him also answered. No further action was taken in the case until November 22, 1933, after the Margetich Case had been decided by the Supreme Court. On that date plaintiff filed a supplemental petition reiterating and affirming all the allegations of its original petition, and, in addition, averred that while the Margetich suit had been finally adjudicated and there was no longer any dispute as to the ownership of the one-half interest in the minerals therein involved, another dispute had arisen as to the ownership of one-half of the rentals and/or royalties due under the terms of the oil and gas lease executed by Emmons, Eaton, and Young, unto Perkins, and that said dispute arose from the adverse contentions of Eaton and his transferees and Emmons and his transferees; the petition on the subject saying:

"That the parties owning an undivided one-half interest in the minerals in under the S. E. ¼ of S. W. ¼ of Section 27, Township 23 North, Range 16 West, as hereinabove set

forth, namely; J. D. Eaton, J. S. Slack, Conway Stroud, C. B. Prothro, Bryan E. Bush, J. W. Mobley, J. K. Wadley and Alma B. Brown, with the exception of C. B. Prothro, Bryan E. Bush and J. W. Mobley, are contending that they are entitled to receive one-half of the rental due for a closed-in gas well in the sum of $100.00, which amount has heretofore been deposited in the Registry of this court; that they are also entitled to receive one-half of all the royalties due for any oil and/or gas that may be produced, withdrawn and saved from the well now located on the S. E. ¼ of S. W. ¼, of Section 27, Township 23 North, Range 16 West, or from any other well which may be drilled on said 40-acre tract; that the parties owning one-half the minerals in and under the S. W. ¼ of S. W. ¼ of Section 27, Township 23 North, Range 16 West, as hereinabove set forth, namely; J. J. Emmons, J. W. Mobley, Bryan E. Bush, C. B. Prothro, are contending that they are entitled to share in said closed-in gas well rental and oil and/or gas royalties due for minerals withdrawn, produced and saved from the well located in the S. E. ¼ of S. W. ¼ of Section 27, Township 23 North, Range 16 West, by virtue of the fact that the oil, gas and mineral lease executed by J. J. Emmons, J. D. Eaton and B. E. Young in favor of B. L. Perkins on December 27, 1928, was and is a joint lease, and under the terms and construction thereof the owners of the minerals in and under each of the two 40-acre tracts, covered by said lease, are entitled to share proportionately in the oil, gas and other minerals which may be withdrawn from either or both of said tracts."

Plaintiff further averred that since the filing of the original petition herein, it had deposited in the registry of the court $877.72, which covered one-half of the royalties due by it to October 25, 1933, under the lease to Perkins, and that it desired to continue to deposit in the registry of the court all of the royalties due the mineral owners whose interests are in dispute until this controversy is finally settled. An order of court issued on this supplemental petition, as prayed for, and all the persons cited under the original petition, excepting Margetich and his assignees, were ordered cited and served. All of them accepted service and waived citation.

The position of J. J. Emmons, J. W. Mobley, C. B. Prothro, and Bryan E. Bush, reflected from their joint answer to the original and supplemental petitions, is: That the lease by Young, Eaton, and Emmons to Perkins, in so far as it affects the S. W. ¼ of S. W. ¼,

section 27, has, by its own terms, expired, because no extension of the term of the lease has been granted by them, and there has been no production therefrom by lessee or his assignees, and no rents or royalties have been paid to them. In the event this position is not sustained, and the lease is held to be in force and effect, in the alternative, they plead that the lease to Perkins is a joint lease, and that the funds on deposit should be equally divided between Eaton and his transferees, and Emmons and his transferees, one-half to each side; and that under such apportionment their interest in said fund would be: Emmons, one-fourth; Mobley, three-sixteenths; and Prothro and Bush, jointly, three-sixteenths.

Plaintiff moved to strike out that part of the answer filed by Emmons, Mobley, Prothro, and Bush wherein they asked for cancellation of the lease to Perkins in so far as it affects the S. W. ¼ of S. W. ¼, section 27, and by way of argument avers that the allegations of the answer touching this issue is in effect a reconventional demand, not connected with, incidental to, or growing out of the issues and matters involved in the interpleader suit; that the validity of said lease, vel non, cannot be injected into this proceeding. This motion was referred to the merits and by implication was overruled by the judgment on the merits. It is urged here.

Slack and Stroud excepted to plaintiff's supplemental and amended petition on the ground that it did not set forth any cause or right of action. This exception was also referred to the merits and, in effect, overruled by the judgment on the merits of the case. It is argued and urged in this court.

Brown and Wadley coupled with their answer an exception of no cause and no right of action against plaintiff's petition, and further excepted to said petition for the reason that the question of title to the oil and gas lease cannot be tried in this proceeding. No definite action was had on either exception before judgment on the merits. Their answer is a general denial, except that they assert ownership of an undivided one-eighth interest in and to all the minerals and mineral rights to the S. E. ¼ of S. W. ¼, section 27, and deny that Emmons and those claiming under him have any interest in the minerals produced from said tract.

Answering plaintiff's supplemental and amended petition, Slack and Stroud contend that they own one-eighth interest in the oil, gas, and other minerals under the S. E. ¼ of S. W. ¼, section 27, and are entitled to

same interest in the whole royalty stipulated in, the lease thereto to Perkins, and are the owners of and entitled to "one-eighth of the entire proceeds of said gas well accruing to the one-eighth royalty interest, being one-fourth of the funds deposited into court." They aver that after the Margetich suit was settled by the Supreme Court decision, the only real dispute in the case was finally terminated, and that the fund deposited in court by plaintiff should be apportioned among the owners of the minerals and royalty rights in and to the S. E. ¼ of S. W. ¼ of section 27, and future allocations of funds accruing from the well thereon should likewise be made. These defendants vehemently assail the contention advanced by some of their co-defendants that the lease to Perkins was a joint one, and that the owners of mineral and royalty rights through Emmons were entitled to share proratably, on acreage basis, in the royalty fund derived from the producing well on the Eaton 40. They pray that the demands of plaintiff be rejected, and in other respects their prayer is in keeping with their allegations.

The demand of Emmons and assignees for cancellation of the lease to Perkins in so far as it involved the S. W. ¼ of S. W. ¼ of section 27, was rejected by the lower court. The funds deposited in the registry of the court were ordered paid to the following named parties in the proportion named, namely;

| | |
|---|---|
| J. D. Eaton | ⅛ |
| J. K. Wadley | 1/16 |
| Alma B. Brown | 1/16 |
| J. S. Slack and Conway Stroud | ⅛ |
| J. W. Mobley | 3/16 |
| C. B. Prothro and Bryan E. Bush | 3/16 |
| J. J. Emmons | ¼ |

And the judgment further decreed:

"By virtue of said lease the parties owning the minerals under the South Half of Southwest Quarter of Section 27, Township 23 North, Range 16 West, Caddo Parish, Louisiana, are entitled to rents and royalties due under the terms of said lease covering said property in proportion to the respective parties interest bears to the whole of the property."

The demands of Slack and Stroud, in so far as they conflicted with the terms of this judgment, were rejected.

Emmons, Bush, Prothro, and Mobley prosecute a joint appeal from said judgment. Slack and Stroud do likewise, and also Brown and Wadley.

The appeals of Stroud, Slack, Brown, and Wadley were answered by Eaton, Mobley, Prothro, and Bush. They aver:

"That if the Court reverses the judgment of the lower court and decrees that Emmons and his transferees are not entitled to any of the funds deposited in Court, then and in that event, they ask this Court to amend the judgment by allowing them to participate in the funds in proportion to their respective interests bears to the funds deposited."

### The Exceptions.

■■ There is no merit in the exception of no cause and no right of action filed and urged by Slack and Stroud. Plaintiff had the right under Act No. 123 of 1922, as an original proposition, to have done what it did do by a supplemental and amended petition, namely, seek court permission to deposit the controverted fund in its possession, and constantly increasing, into the court registry and implead all persons asserting an interest therein. That plaintiff was justified in alleging that a dispute existed as to the proper distribution of said funds is clearly revealed by the contention of Emmons and his assignees that they are entitled to share in the fund, though they have no title to any part of the minerals or royalty rights in and to the east, or Eaton, 40. The main purpose of the cited act was to afford a remedy to stakeholders, and others in possession of funds, the ownership of which was in serious dispute, to relieve themselves of liability in connection with their possession of such funds, and avert danger of having to pay out the amount more than once, by depositing same into court and provoking a controversy in which the rights of all claimants thereto could be judicially foreclosed. This result is what plaintiff seeks to bring about. Under the act its right to do so is clearly provided.

■■ We do not think plaintiff's motion to strike out well founded. That part of the answer of defendants Emmons, Mobley, Prothro, and Bush against which this motion is directed, is in its nature a reconventional demand, and, we think, falls within the requirements of article 375 of the Code of Practice, to the effect that such a demand must be "necessarily connected with and incidental to" the main demand. To determine a proper distribution of the fund in question, it is necessary to determine the extent and nature of the correlative rights of all persons holding under, or through the legal effect of, the lease by Eaton, Emmons, and Young to Perkins, so far as such rights may be involved in this controversy; and to correctly do this,

since the question is raised, it becomes necessary to determine the validity of the lease under and through which all claim. Pretermitting for the present the question of the right of Emmons and assignees to share in the royalty benefits arising from the well on the Eaton 40, it must first be decided whether the lease on the Emmons tract is in effect, or has lapsed for failure on part of plaintiff to comply with the obligations encumbent upon it under the terms of the lease. We have found no decision construing Act No. 123 of 1922 in the light of the issue here discussed, but it is our impression issues of a wide range could be raised and maintained thereunder. Any relevant fact bearing upon the ownership and distribution of the involved fund may be raised under said act and the legality and validity of the right or title of all claimants thereto necessarily is involved, if denied or questioned. In this case the holders of rights under Eaton are, or should be, interested in the status of the Emmons lease because should it be held that Emmons and his assignees have the right to share in the royalty from the well on the Eaton tract, Eaton and his transferees will have the same right to participate in proceeds from royalty of any producing well brought in on the Emmons 40. The rights of the two lines of claimants are reciprocal in this respect.

### The Merits.

■ The lease in question does not disclose the respective interests of the three lessors in the 80 acres leased. It is stated that the *lessor* has been paid $80 in cash for the lease and for this price it would be kept in full force and effect for 12 months, and that if no well is commenced on "*said land*" on or before 12 months from the date of lease, it shall terminate as to both parties, but the termination could be prevented by payment of $80 additional rentals for two more years. The well was commenced and brought in as a producer before the first 12 months expired. It is also stipulated in the lease that it shall remain in force as long as oil or gas is produced from *said land*. It seems to us exceedingly clear that the entire 80-acre tract is treated by this lease as a unit, and regardless of its ownership being severable as between the lessors, it is joint quoad the lessee and those holding under him. As long as the lease is kept in effect as to any part of the land by compliance with its provisions, it is kept in effect as to the whole of the tract. When the well was drilled and brought in on the east 40 it was located, for all intents and purposes of the lease, on the *land* covered by the lease, and this being true, the efficacy of the lease in its entirety was preserved to the plaintiff as long as production continues. This holding finds support in Nabors v. Producers' Oil Company, 140 La. 985, 74 So. 527, 532, L. R. A. 1917D, 1115. The lease involved in that case covered over 900 acres, composed of different tracts owned by different persons. This opinion discusses and passes on the point we are considering. It was contended in that case that the drilling of a well on one tract during the primary term of the lease did not keep the lease alive as to the tracts not drilled on. The court overruled this contention and inter alia said:

"The second complaint is that the beginning of operations for the drilling of a well on the land of W. A. Nabors and Mrs. Sallie Mag Nabors did not prevent a forfeiture of the lease of the lands of the other grantors. The force of that contention depends upon the contract being severable, not joint or entire. We agree with the finding of the district judge that the contract is not severable, but joint or entire. Article 2080, R. C. C., provides that, when several persons join in the same contract to do the same thing, it produces a joint obligation on the part of the obligors; and article 2081 provides that, when one or more persons make an obligation to several persons for the performance of something for the common benefit of all the obligees, it creates an obligation that is joint in favor of the obligees. Article 2084, R. C. C., declares that several obligations, although created by one act, have no other effect than the same obligations would have, if made by separate contracts, and that they are governed by the rules which apply to all contracts in general. But the Code does not lay down a rule for determining what contracts are joint and what are severable, except that, when several persons join in the same contract to do the same thing it produces a joint obligation on their part, and that, when an obligation is incurred in favor of several persons for the performance of something for their common benefit, it creates a joint obligation in their favor. Whether a contract is severable or joint depends upon the intention of the contracting parties as revealed by the language of their contract and the subject-matter to which it refers. With regard to the subject-matter, the authorities agree that the contract is entire and not severable, although it embodies a conveyance or delivery of several things, if the consideration is paid in a gross sum and it is impossible to affirm that the party making the payment would have done so unless the rights he acquired should

apply to all of the things mentioned. See 6 R. C. L. p. 859, § 246. * * *

"Our conclusion is that the provision in the sixth paragraph of the contract, 'operations for the drilling of a well for oil or gas shall be begun within one year,' cannot be construed to mean that operations for the drilling of a well should be begun on the lands of each of the grantors. Hence our conclusion is that the beginning of operations for the drilling of a well on the tract of land belonging to W. A. Nabors and Mrs. Sallie Mag Nabors within the year from the date of the contract prevented a forfeiture of the lease on all of the lands described in the contract." The rule laid down in this case, if generally applied, is a harsh one, and in many cases will work inequitably on the lessor who has received little or nothing in consideration for the lease on his property, beyond the hope and expectation of developments thereon. However, in the cited case the lessors were paid $25 per acre, and renewal rights were on the same basis.

What would the situation be should the lease be decreed to have expired and of no further effect in so far as it involves the interest of Emmons and his assignees in the S. W. ¼ of S. W. ¼? Such a decree would not affect the rights of Young and his transferees in that 40. They own the same interest therein as do Emmons and his transferees, and are asking for no relief from the lease. Emmons and his assignees could not well afford to undertake drilling operations on the tract when plaintiff and Young and his transferees own one-half of all the minerals in and under the land; and in no event can plaintiff be compelled to drill a well or wells thereon. The lease contract contains no such requirement.

■ The question raised by the alternative contention of Emmons and his assignees is of first impression in this state. They contend that the lease is joint as to the lessors and not severable on the basis of their ownership of the minerals when the lease was executed. The question has been before many of the courts of other oil producing states of the Union. There are two distinct lines of jurisprudence on the subject. The majority rule is that such a lease is severable as between the lessors and each lessor only shares in production from his own land. The majority rule does not support the contention that from the fact of owners of different tracts, or owners of different interests in parcels of the same tract, joining in the same lease, a presumption arises that they

intend thereby to pool their various properties or interests and tacitly agree to have the land operated as an entirety and to share in production from one or all of the tracts covered by the lease, on the basis of proportionate ownership. To the contrary, if any presumption arises at all it certainly would be in favor of the negative of such a proposition. Intention to pool interests in this matter may only be determined from the express contract of the parties or from facts and circumstances which certainly establish such intention on their part. It should never be inferred simply from the fact that different owners joined in the same lease contract. In the case at bar, had the lessors intended to pool their mineral interests by signing a joint lease to Perkins, it seems to us that Eaton and Emmons thereafter, when disposing of fractional portions of their royalty rights, would not have confined their transfers to the respective 40 owned by them, but would have described the entire 80-acre tract. For us to say that they did intend to pool their interests would be writing into the contract a very material provision which the parties themselves did not think well enough of to incorporate therein; and, certainly, when Eaton's transferees bought and paid for portions of his royalty rights they never dreamed that those interested in the other 40 had any semblance of right to participate with them in the benefits they hoped to enjoy from their investments.

■ The situation Emmons and his transferees find themselves in is but the same that Eaton and his assignees would be in had the well been brought in on the west 40 of the leased tract. In buying an interest in the royalty, each purchaser in a sense was betting on a well being drilled on the 40, the royalty of which he acquired an interest in, and that it would be a producer. We see no good reason to hold that the successful adventurer should be compelled to share his profits with the unsuccessful. While the predicament of Emmons and his assignees is to be deplored, yet it is but the effect of a contract deliberately signed by him, without having incorporated therein protective clauses to meet a contingency such as we are dealing with. As has so often been said, it is the province of the court to construe contracts between individuals, not to write them or distort their plain and unambiguous meaning.

Slack and Stroud contend that the assignment to them from Herrsher carried one-eighth interest in the entire royalty devolving under the lease to Perkins, instead of

one-eighth of Eaton's individual part (half) of such royalty. This assignment is not before us, neither is that from Eaton to Herrsher. No other party to this suit, excepting Brown and Wadley, places this construction on the assignments in question. The statement of facts used as evidence in the case does not entirely make the matter clear, but as it appears that Eaton conveyed to Herrsher one-fourth of the "minerals" under the S. E. ¼ of S. W. ¼, we conclude that as he only held a one-half interest in such minerals (royalties) in that 40, he thereby intended to sell one-half of what he had, leaving him vested with a one-fourth thereof, and when Herrsher assigned one-eighth of the minerals under the 40 to Slack and Stroud, he conveyed one-half of what he owned. The lower court so construed this matter, and we adopt that construction. This ruling applies to Brown and Wadley also.

For the reasons assigned, that part of the judgment of the lower court which decrees that J. J. Emmons and his transferees are entitled to participate in the proceeds of the royalty and/or rentals derived from the gas well on the S. E. ¼ of S. W. ¼, section 27, township 23 north, range 16 west, is annulled, avoided, and reversed; and it is now ordered, adjudged, and decreed that said rents and/or royalties be entirely paid over to J. D. Eaton and his assignees in the proportion set forth in paragraph 4 of plaintiff's supplemental and amended petition; and in all other respects, and as amended hereby, the judgment appealed from is affirmed. Costs of appeal are cast upon appellants.

MILLS, Judge (dissenting).

It is conceded that we have no law in this state on the question submitted. Article 21 of our Civil Code provides:

"In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent."

In this case the lease is a joint or entire lease and not severable. Nabors v. Producers' Oil Co., 140 La. 985, 74 So. 527, L. R. A. 1917D, 1115.

The description of the land leased is: "South Half of Southwest Quarter of Section 27, Township 23 North, Range 16 West," containing 80 acres more or less. There is a recited consideration of $1 per acre and other good and valuable considerations. The term is three years and as long thereafter as oil or gas, or either of them, is produced from said land by the lessees.

The $1 per acre is not the main consideration. The real consideration is the obligation to explore for oil or gas. Why should this lease, which contains no suggestion of separation of interest in the description of the land or terms, be held a joint lease as to everything except its very essence development? The view adopted in the majority opinion does not make of it a gambling proposition, as suggested, but on the other hand invests the lessees with the sole power to determine whose land they will develop and which one of the joint lessors will receive the whole consideration for the lease to the exclusion of the joint lessors. It also enables the lessees to hold the land of the joint lessors, throughout the period of its mineral value, without development or the payment of any consideration whatever. There is no showing that the lessors are the owners of adjoining land which would increase in value or that the development would enrich them in any way, if denied the right to participate in the minerals produced on the leased premises.

Such a situation is not tolerated by the civil law and certainly is not equitable. I cannot conclude from the terms of the lease that any such condition was contemplated. On the other hand, it seems reasonable to me that the intention was that all the joint lessors should share proportionately in the consideration realized from the joint venture. To me, the best indication that the lease was intended to be joint is that the lessors entered into a joint and not a separate lease.

For the above reasons, I respectfully dissent and am of the opinion that the judgment of the lower court should be affirmed.