8 So.2d 631

FRENCH et al. v. QUERBES et al.

No. 35048.

May 25, 1942.

Cook, Cook & Egan and Albert T. Hughes, Jr., all of Shreveport, for appellants.

Blanchard, Goldstein, Walker & O'Quin, Tucker, Bronson & Martin, Wilkinson, Lewis & Wilkinson, and F. Leonard Hargrove, all of Shreveport, for appellees.

HIGGINS, Justice.

The husband and wife, the owners of the fee simple title to two separate contiguous tracts of land, instituted this action against R. B. Williams, their transferee of an undivided one-half mineral interest in the 40-acre tract of land, and his respective assignees of certain mineral interests therein, to be recognized as the owners of 72/92nds of the royalties and the rentals accruing under a mineral lease, which the plaintiffs granted on their two respective tracts of land covering the S.E.¼ of the N.W.¼ and south 12 acres evenly off the

south side of the N.E.¼ of N.W.¼ containing 52 acres of land (the separate and paraphernal property of the wife), and the S.W.¼ of N.W.¼, containing 40 acres (belonging to the community of acquets and gains existing between the plaintiffs), or a total of 92 acres, both tracts being in Section 23, Township 23 North, Range 16 West, Caddo Parish, Louisiana; and they also prayed for an accounting of 26/92nds of the royalties paid under the lease over a period of seven years to the defendants, it being alleged that the defendants were overpaid to that extent out of the production from the above described 40 acres of land.

The eight defendants filed exceptions of no right and no cause of action on the ground that neither from the provisions of the oil and gas lease nor from the alleged conduct of the parties at the time it was executed or subsequently thereto, did it appear that the plaintiffs intended to pool their interests or confect a community or joint lease.

The trial judge, in sustaining the exceptions, concluded that even if the lease be considered a pooling one, nevertheless, from the allegations of the petition and the documents annexed to the pleadings, it appeared that the plaintiffs sold to R. B. Williams one-half of their mineral rights in the 40-acre tract of land only, without any express or implied reference to the 52-acre tract of land, and, therefore, the defendants, the transferee of one-half of the mineral interest of the plaintiff, and his assignees, were entitled to one-half of the royalties from the production on the 40

acres of land, the amount that they had been receiving for a period of seven years, and that the plaintiffs were not entitled to have the 52-acre tract considered as in any way affecting their mineral rights or royalty interests in the 40-acre tract.

The plaintiffs appealed devolutively.

As the case comes to us solely on the issue of whether or not the trial judge correctly maintained the exceptions of no right and no cause of action, the allegations of fact of the plaintiffs' original and supplemental petitions, and the facts established by the documents annexed to the pleadings, are to be accepted as true for the purpose of considering the exceptions.

The record shows that Mrs. Fannie B. French and her husband, J. B. French, owned in community the 40-acre tract of land above described and that the 52-acre tract of land in question was the separate and paraphernal property of the wife. On December 14, 1928, they executed an oil and gas lease in favor of D. L. Perkins covering both tracts of land separately described, reserving a ⅛ royalty in all oil, gas and casinghead gasoline produced. On October 16, 1929, the wife conveyed to R. B. Williams one-half of the minerals in and under the above described 40-acre tract, subject to the Perkins' lease. On November 2, 1929, the husband ratified the sale of the above minerals by his wife. On September 21, 1935, the husband executed a dation en paiement to his wife of the above 40 acres of land and thus at the time of the filing of the suit on April 1, 1938, she was the sole owner of both tracts of land or

the 92 acres, except for the previously alienated mineral interest therein.

■ The jurisprudence of this State is well-settled, when two or more tracts of land separately owned are included in one lease, that that fact alone does not create the presumption that the lessors intended to pool their royalties or make a joint or community lease. Martel v. A. Veeder Co., 199 La. 423, 6 So.2d 335.

In the case of Louisiana Canal Co. v. Heyd, 189 La. 903, 181 So. 439, 116 A.L.R. 1260, in holding that it was the intention of the parties to make the lease a joint one and that their actions brought them within the scope of the case of Shell Petroleum Corporation v. Calcasieu Real Estate & Oil Co., 185 La. 751, 170 So. 785, and, therefore, the case of the United Gas Public Service Co. v. Eaton, La.App., 153 So. 702, was inapplicable, the Court said [189 La. 903, 181 So. 442, 116 A.L.R. 1260]:

"In all cases where parties owning separate tracts of land execute together one oil and gas lease covering their separate tracts and where the lease contract contains no community or pooling clause, whether they are entitled to share proportionately in the royalties, regardless of which tract is developed, depends on the intention of the parties. From the fact that the parties join in the same lease contract and from that fact alone, there does not necessarily arise a presumption that they intended to pool. In the case of Lusk v. Green, 114 Okl. 113, 245 P. 636, it was held:

" 'Where a husband and wife, each owning a tract of land not contiguous but several miles apart, execute an oil and gas mining lease, and each tract is separately described in and covered by the same lease contract, it will not be presumed that either intended to convey to the other a royalty interest in his or her land, unless there is some affirmative evidence evincing such intention.'

"No hard and fast rule of interpretation can be laid down for determining the intention of the parties in a given case, and no presumption of law arises one way or the other as to their intention from the mere fact that they sign a lease contract together. Where such lease contracts are silent as to the intention of the parties and where the parties have not by their conduct and dealings since the confection of the lease indicated their own interpretation of it, the circumstances under which the contract was made may and should be considered in order to determine their intention."

In United Gas Public Service Co. v. Eaton, supra [153 So. 708], the Court held:

"The question raised by the alternative contention of Emmons and his assignees is of first impression in this state. They contend that the lease is joint as to the lessors and not severable on the basis of their ownership of the minerals when the lease was executed. The question has been before many of the courts of other oil producing states of the Union. There are two distinct lines of jurisprudence on the subject. The majority rule is that such a lease is severable as between the lessors and each lessor only shares in production from his own land. The

majority rule does not support the contention that from the fact of owners of different tracts, or owners of different interests in parcels of the same tract, joining in the same lease, a presumption arises that they intend thereby to pool their various properties or interests and tacitly agree to have the land operated as an entirety and to share in production from one or all of the tracts covered by the lease, on the basis of proportionate ownership. To the contrary, if any presumption arises at all it certainly would be in favor of the negative of such a proposition. Intention to pool interests in this matter may only be determined from the express contract of the parties or from facts and circumstances which certainly establish such intention on their part. It should never be inferred simply from the fact that different owners joined in the same lease contract. In the case at bar, had the lessors intended to pool their mineral interests by signing a joint lease to Perkins, it seems to us that Eaton and Emmons thereafter, when disposing of fractional portions of their royalty rights, would not have confined their transfers to the respective 40 owned by them, but would have described the entire 80-acre tract. For us to say that they did intend to pool their interests would be writing into the contract a very material provision which the parties themselves did not think well enough of to incorporate therein; and, certainly, when Eaton's transferees bought and paid for portions of his royalty rights they never dreamed that those interested in the other 40 had any semblance of right to partici-

pate with them in the benefits they hoped to enjoy from their investments.

"The situation Emmons and his transferees find themselves in is but the same that Eaton and his assignees would be in had the well been brought in on the west 40 of the leased tract. In buying an interest in the royalty, each purchaser in a sense was betting on a well being drilled on the 40, the royalty of which he acquired an interest in, and that it would be a producer. We see no good reason to hold that the successful adventurer should be compelled to share his profits with the unsuccessful. While the predicament of Emmons and his assignees is to be deplored, yet it is but the effect of a contract deliberately signed by him, without having incorporated therein protective clauses to meet a contingency such as we are dealing with. As has so often been said, it is the province of the court to construe contracts between individuals, not to write them or distort their plain and unambiguous meaning."

In order to show that the parties intended to make a community or joint lease covering both tracts of land in the instant case, counsel for the plaintiffs point out that the lease contains the following clause: "If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided shall be paid the lessor only in the proportion which their interest bears to the whole and undivided fee."

For the same purpose counsel for the plaintiffs also direct our attention to the

clause, in the sale of the one-half mineral interest to Williams in the 40-acre tract, which provides that the sale was made subject to the Perkins' lease.

The above quoted provision of the lease is a common one appearing in ordinary printed forms of commercial oil and gas leases for many years in this State. Dimick's Louisiana Law of Oil and Gas (1922), pages 292–297. This clause is inserted in the lease to protect the lessee against the hazard of having to pay more than the total royalty stipulated in the lease, in the event it should develop that the lessors were not the sole owners of the mineral estate and thus force the lessee to acquire an additional lease or leases to cover all of the minerals in the lands. If the Court were to hold that this provision is sufficient to show the intention on the part of the lessors to pool or unitize their royalties, then practically every oil and gas lease in existence in this State confected on the identical ordinary printed forms would be joint or pooling leases, where they covered two or more tracts of land owned by different parties. Certainly, no one contemplated such a result. When lessors intend to pool or unitize their royalties they insert in the lease a statement to the effect that the royalties shall be paid according to the proportion in which the lessors own the minerals in the entire leased premises and without regard to the location of the well or wells subsequently drilled, as appears from paragraph 11 of the lease of the Shell Petroleum Corporation v. Calcasieu Real Estate & Oil Co.,

supra, and paragraph 17 of the lease in Robinson v. Horton, 197 La. 919, 2 So.2d 647.

In Carlock v. Krug, 151 Kan. 407, 99 P.2d 858, 862, the contention that the provision in the lease providing for reduction in royalties in the event the lessors owned less than the entire mineral estate, made the lease a joint or community one was rejected by the Supreme Court of Kansas. The Court pointed out the difference between the customary "entirety clause" and the customary "reduction of royalties clause" and stated:

"* * * The provision in the instant case relied upon is not such an 'entirety clause.' It has long been a usual provision commonly carried in oil and gas leases, and its obvious purpose is merely to provide that if it develops subsequent to the lease, that the lessor did not in fact have full title to the tract, he should receive royalties only in the proportion which his interest bears to the full title. The provision has no reference to any future subdividing of the original tract. This is clear not only from the wording itself but is further indicated by the fact that leases which now include the new 'entirety clause' ordinarily still retain the old provision upon which appellant relies."

The statement in the mineral deed that it is subject to the lease was inserted therein solely to protect the plaintiffs as warrantors and not for the purpose of showing that the lessors intended to make a joint or pooling lease.

The record shows that over a period of seven years the lessee has paid to the defendants from the production on the 40-acre tract of land one-half of the royalties, aggregating $13,000. In the mineral deed to Williams it is stated that it "* * * covers and includes one-half (½) of all of the oil royalties and gas rentals or royalties due or to become due under the terms of the lease, and a like interest in all money rentals," etc. If the plaintiffs had intended that Williams should not acquire more than 20/92nds of the royalties payable from the production on the 40-acre tract, they would have made that contention in 1931 when the well came in as a producer. The provisions of the mineral deed as well as the conduct of the plaintiffs and the defendants show that the plaintiffs intended that Williams should receive one-half of all royalties payable from the production of the 40-acre tract of land and that the defendants were not entitled to any royalties from production on the 52-acre tract.

It is our opinion based upon the allegations of the plaintiffs' petition and the documents annexed to the pleadings that the plaintiffs have failed to show that, in confecting the lease in question, they intended to make a joint or community lease and therefore the exceptions of no right and no cause of action are well founded.

For the reasons assigned, the judgment appealed from is affirmed at appellants' costs.