23 So.2d 26

DOBBINS v. HODGES.

DOBBINS et al. v. HODGES et al.

SAME v. HIBBLER et al.

No. 37611.

April 30, 1945.

Rehearing Denied June 5, 1945.

Herold, Cousin & Herold, of Shreveport, for defendants-appellants.

· Ben F. Roberts, of Shreveport, and Robert H. Wimberly, of Arcadia,. for plaintiffs-appellees.

PONDER, Justice.

The three suits involved herein were consolidated for the purpose of trial. The plaintiffs, the landowners, instituted slander of title suits against the various defendants, asking for the cancellation of certain mineral deeds which they allege are prescribed by the non-use of the servitudes over a period of ten years. The defendants rely on a certain contract of lease dated November 14, 1931. They contend that the contract is a community lease, and that the mineral and royalty interests can-

not prescribe as long as there is production from any portion of the leased premises.

In Suit No. 16,881 of the docket of the lower court, the plaintiff landowner, W. Morphis Dobbins, seeks to have cancelled and erased from the records a certain mineral deed dated November 14, 1924 wherein Mrs. H. E. and W. T. Dobbins conveyed to the defendant, W. H. Hodges, Jr., one-half of the minerals in and under certain lands insofar as it affects the S½ of the NE¼ of the NW¼ of Section 12, Township 19 North, Range 6 West in Claiborne Parish.

In Suit No. 16,882 of the docket of the lower court, the plaintiffs and landowners, W. Morphis Dobbins, individually and as tutor of the minors, Opal Erline, Chloie Mildred and Loy Henderson Dobbins, seek to have cancelled and erased from the records a certain mineral deed dated October 2, 1924 wherein W. T. and W. M. Dobbins conveyed to the defendant, W. H. Hodges, Jr., one-half of the minerals in and under the following lands situated in Claiborne Parish: the W½ of the SW¼ of Section 1, and the NW¼ of the NW¼ of Section 12, and one-half acre off the north end of the SW¼ of the NW¼ of Section 12, all in Township 19 North, Range 6 West. They also seek to have cancelled and erased a certain mineral deed wherein W. H. Hodges, Jr., the defendant, sold to O'Brien Brothers, Inc. a portion of his mineral interest in this property.

In Suit No. 16,884 of the docket of the lower court, the plaintiffs and landowners, W. Morphis Dobbins, individually and as tutor of the minors, Opal Erline, Chloie Mildred and Loy Henderson Dobbins, seek to have a mineral deed executed by. W. T. and W. M. Dobbins to Wm. H. Cook on October 17, 1924 conveying one-fourth of the minerals in and under the NW¼ of the SW¼ of Section 1, Township 19 North, Range 6 West, cancelled and erased from the records of Claiborne Parish. They also seek to have cancelled and erased from the records two certain deeds whereby the defendant Cook subsequently transferred a one-sixteenth interest of the mineral rights to T. G. Hibbler.

Since the institution of suits 16,881 and 16,882 of the docket of the lower court, W. H. Hodges, Jr., has died, and his heirs have been substituted in his place.

All three suits are based on the ground that the servitudes have prescribed because of non-use during the ten-year prescriptive period.

The defendants rely on a certain lease dated November 14, 1931 as a defense to all three suits. They take the position that the landowners, having joined with the mineral owners in a community lease, are bound by the terms of the lease contract.

Upon trial of these suits, the lower court gave judgment ordering the cancellation of the mineral deeds from the records of Claiborne Parish as prayed for by the plaintiffs. The defendants have appealed.

The defendants take the position that the judgment of the lower court failed to give effect to the community lease.

The servitudes involved in these suits are contiguous and embrace an area of 140½ acres of land which we shall hereinafter refer to as the West 140½ acres.

The land and mineral owners of this 140½ acres of land joined in a contract on November 14, 1931 with the land and mineral owners of another tract of land, containing 140 acres, hereinafter referred to as the East 140 acres, wherein all of the outstanding leases on the entire 280½ acres were consolidated and leased to the Standard Oil Company of Louisiana, United Gas Public Service Company, and the Sugar Creek Syndicate, Inc. This contract was signed by the lessees and all of the land and mineral owners, except O'Brien Brothers, Inc., on the day it was executed.

The contract provides that all parties desire to consolidate and pool the leases covering all of the property. It is agreed therein that the oil and gas royalties of the mineral owners accruing under all leases are pooled for the life of the leases and no longer to the same extent as if the mineral owners were each the owner of an undivided interest in the minerals in the proportion which the interest of each bears to the whole 280½ acres of land. It is provided that the lessees are authorized to distribute the royalties according to the division of interests set forth in Schedule A attached to the contract. Schedule A provides for distribution of royalties among the lessors and mineral owners in proportion to the mineral interest that each bears to the 280½ acres of land. It is provided that for the purpose of development of the property all the leases shall be considered as forming one lease covering the entire tract of land, and any and all wells drilled on any part or portion of the property shall be considered as being drilled under all of the leases. It is stated in the contract that it is executed in consideration of the advantages accruing to the parties by clarifying the provisions of the pooled leases with reference to the payment of royalties and in consideration of the obligation of the lessees to commence drilling operations on or before November 15, 1931 and to continue such operations until the Sugar Creek producing horizon is reached. It is further provided that the terms and provisions of this contract shall be irrevocable as long as the pooled leases as modified by this agreement shall remain in force and effect.

After this agreement was entered into, the lessees completed a producing well on January 3, 1932 which is still in operation. This well is situated on the East 140 acres of land. The East 140 acres of land are not contiguous to the West 140½ acres but merely connect at a corner.

During the spring of 1942, a producing well was brought in on the West 140½ acres. Another producing well was brought in on this tract of land during the month of September, 1942. The present suits were instituted thereafter on November 24, 1942.

In the case of Robinson v. Horton, 197 La. 919, 2 So.2d 647, we had occasion to pass on a contract similar to the one involved herein and arrived at the conclusion that, where the land and mineral owners entered into a contract unitizing and integrating their mineral interests by creating one whole lease in favor of a lessee for the purpose of developing the property and dividing the royalties in proportion to the interest that each bore to the entire

acreage covered by the contract, the law of contract governs, and that as long as the lease is kept alive under the terms of the contract the royalties would not prescribe.

█ The lessees complied with the provisions of the contract by drilling a well on the leased premises. Under the provisions of the contract, it is immaterial on what portion of the land the production is secured for the reason that it is provided in the contract that the drilling on any portion of the land is considered as drilling under all of the pooled leases. From a mere reading of the contract, it is apparent that all of the parties entered into this contract, pooling their interests, for the purpose of obtaining production. The contract provides for the commencement of drilling operations on the day following its execution and for the continuance of the operations until the producing horizon is reached. When the drilling operations reached this horizon, production was obtained. The well has continued to produce oil. Subsequently, two more producing wells were brought in on the West 140½ acres of the leased premises.

Although most if not all of the property involved herein was under lease prior to the execution of this contract, no development was secured. The development was obtained by this contract, which enured to the benefit of all who owned mineral rights in any part of the property. In order to secure the drilling of a well on the leased premises the parties entered into this agreement, and they are bound by their

contract which under its terms continues in effect as long as production is had.

█ We know of no law, and none has been cited which prevents parties from entering into a contract pooling their interests in order to obtain production. In this case, the parties have contracted and are bound by the terms of their agreement.

The case of Robinson v. Horton, supra, has been cited with approval in the case of French v. Querbes, 200 La. 654, 8 So.2d 631.

The plaintiffs contend that since the West 140½ acres and the East 140 acres constitute two separate and distinct tracts of land, which are not contiguous, the exercise of the servitude on one of the tracts of land does not preserve the right of servitude over the other. They contend that the servitudes on the West 140½ acres have prescribed for the reason that such property was not developed within the ten-year prescriptive period.

█ We find no fault with the propositions of law that: (1) drilling on a noncontiguous tract of land would not interrupt the running of prescription against rights on another tract of land; and (2) the reservation or grant of mineral rights on several non-contiguous tracts of land creates separate and distinct servitudes. However, when parties agree to unitize and integrate an entire tract of land, composed of contiguous or non-contiguous tracts, and provide for the payment of royalties in proportions according to the acreage and interest owned, the contract of

the parties must govern. It is unnecessary for us to cite the articles of the Revised Civil Code governing contracts and the authorities pertinent thereto for the reason that this question was discussed at length in the case of Robinson v. Horton, supra, with respect to a contract of this nature.

The cases of Lee v. Giaque, 154 La. 491, 97 So. 669; Spears v. Nesbitt, 197 La. 931, 2 So.2d 650, and Palmer Corporation of La. v. Moore, 171 La. 774, 132 So. 229, are therefore not pertinent.

The plaintiffs contend that the mineral rights owned by O'Brien Brothers, Inc. are not affected by the contract for the reason that it did not join in the execution of the contract on November 14, 1931.

The record shows that W. H. Hodges, Jr., acquired from W. T. and W. M. Dobbins one-half of the minerals on 120 acres of the West 140½ acres on October 2, 1924. Hodges subsequently sold a portion of his mineral interest to O'Brien Brothers, Inc. The period of prescription began to run from the date Hodges acquired the mineral rights and not from the date of the subsequent acquisition of a portion of these rights by O'Brien Brothers, Inc. When the unitization agreement was entered into on November 14, 1931, the period of ten years had not elapsed from the date of Hodges's acquisition of the mineral rights.

O'Brien Brothers, Inc., did not sign the unitization agreement, but the contract provided for the payment to O'Brien Brothers, Inc., in proportion to its interest fixed at 14.3049% in Schedule A of the contract. Payments were tendered O'Brien Brothers, Inc., on the basis of this percentage which were finally accepted by it in April, 1933, within the prescriptive period. Each check made out to O'Brien Brothers, Inc., was accompanied by a statement showing its interest as set forth in the unitization agreement. When O'Brien Brothers, Inc., accepted these payments it became a party to the unitization agreement and became bound according to all of its terms.

The acceptance of a contract does not necessarily have to be in writing, nor is it essential for it to be signed by the party in whose favor it is made. Where one accepts the benefits of a contract, he is bound by all of the terms contained in the contract. Cerami v. Haas, 195 La. 1048, 197 So. 752; 201 La. 612, 10 So.2d 61; 5 L.L.R. 542.

Counsel for the plaintiffs contends that the execution of the contract of November 14, 1931 on behalf of the minors was null and void for lack of consideration.

From the record it appears that the natural tutor was authorized to enter into this agreement on behalf of the minors by judgment of court dated November 6, 1931. The judgment recites that the drilling of a well on the pooled property will enhance the value of the minors' mineral interests. This judgment is not attacked by the plaintiffs. The plaintiffs are under the impression that the pooling agreement is not to the advantage of the minors for the reason that the primary term of the original lease would have expired on December 12, 1933

unless a well was drilled thereon. They further contend that it was to the minors' disadvantage to enter into the pooling agreement for the reason that certain mineral rights would have reverted shortly thereafter to the minors if the servitude were not exercised. The plaintiffs lose sight of the fact that the pooling agreement provides for the drilling of a well to commence on the day after the agreement was signed and for the continuance of the operations until the Sugar Creek horizon was reached.

The obligation on the part of a lessee to drill a well on leased premises to a given depth is a sufficient consideration for a valid contract of lease. Fite v. Miller, 192 La. 229, 187 So. 650, 122 A.L.R. 446.

Counsel for the plaintiffs contends that the pooling contract has become null and void for the reason that the minors have not been paid their proportionate part of the royalties. The position is taken that the minors' portion of the royalties have been deliberately diverted and not paid to them.

It appears that the natural tutor of the minors assigned the minors' royalty interests to the lessees for the purpose of paying off certain mortgages due the First National Bank of Arcadia and the Federal Land Bank of New Orleans. Counsel points out that the minors' mother died on May 2, 1927 prior to the execution of the mortgages, and that the tutor had no authorization from court to mortgage the minors' interests in the property. In other words, it is argued that the mortgage was effective only as to the natural tutor's un-divided interest in the property, and that the assignment of the minors' royalty interests was illegal and void.

The lessees are not a party to this suit. The minors have no recourse against their co-owners who were not parties to the assignment. Whatever rights the minors have must be asserted against their tutor or the assignee. Since the lessees are not made parties to this suit, the validity of the assignment made to them is not properly presented for our consideration.

For the reasons assigned, the judgment of the lower court is reversed and set aside. It is now ordered that the plaintiffs' demands in all three suits are rejected, and the plaintiffs' suits are dismissed at their costs.

O'NIELL, C. J., concurs in the decree.

HIGGINS, J., takes no part.