PONDER, Justice.
 

 This is a concursus proceeding instituted to determine the rights of certain land owners in the royalties derived from a certain gas well.
 

 On September 28, 1922, Emma Simms, Corinne Smith; I. J. Ferguson and Eliza
 
 *1075
 
 beth Mayfield executed a joint oil, gas and mineral lease in favor of the Thrift Oil & Gas Company, Inc., covering some 133 acres of land. The lease covered 10 acres of land owned by Emma Simms; 40 acres
 
 of
 
 land owned by Emma Simms and Corinne Smith in indivisión; 63 acres of land owned by Corinne Smith; 20 acres of land owned by I. J. Ferguson. The 10 acres owned by I. J. Ferguson was not contiguous to the other tracts of land. The Thrift Oil & Gas Company drilled a producing gas well known as Mayfield No. 1, located on the individual lands of Corinne Smith, covered by the lease. On September 21, 1926, the land owners and the Thrift Company entered into a contract or pooling agreement whereby it was agreed that all royalties accruing under the lease were to be divided in the following proportion: 41% to Emma Simms, 44% to Corinne Smith and 15% to I. J. Ferguson. It was also provided in this contract that the drilling of the well perpetuated the lease in its entirety regardless of the ownership of the lands.
 

 The United Gas Public Service Company acquired the Thrift lease, after various assignments, on March 10, 1931. On September 26, 1932, the United Gas Public Service Company, owner of the Thrift lease, purchased another oil, gas and mineral lease from Elizabeth Mayfield and I. J. Ferguson on the 20 acre tract owned
 
 by
 
 I.
 
 J. Ferguson.
 
 It does
 
 not
 
 appear what interest Elizabeth Mayfield had in the property. On May 15, 1933, I; 'J. Ferguson sold the 20 acre tract of land to Jule W. Parks. On May 29, 1935, Elizabeth Mayfield and I. J. Ferguson# executed to Jule W. Parks a deed to this property and transferred their mineral rights and royalties produced from the well known as Mayfield No. 1 and assigned to him all future payment of royalties thereunder.
 

 On July 29, 1937, the United Gas Public Service Company acquired another mineral lease from Jule W. Parks on this 20 acre tract of land. The plaintiffs in these coricursus proceedings, J. E. Farrell, M. S. Rhoads, D. J. Simmons and the Independent Oil and Gas Company, Inc., through assignments, acquired from the United Gas Public Service Company the Thrift Oil & Gas lease as amended by the pooling agreement insofar as it affected the 20 acre tract of land owned by Jule W. Parks. At the time the plaintiffs acquired the Thrift lease and the Parks leases, a gas well had been drilled on this 20 acre tract of land owned by Jule W. Parks and since that time the royalties from the sale of the gas produced from this well, designated as Parks No. 2, has been accruing. After the royalties had been accruing from the gas well Parks No. 2, a dispute arose between the various land owners as to who was entitled to the royalties. The plaintiffs instituted this concursus proceeding to settle the dispute.
 

 It
 
 appears from the evidence that the royalties from the gas well, Mayfield Noi
 
 *1077
 
 1, has been paid continually to Emma Simms; Corinne Smith, until her death, and then to her heirs; to I. J. Ferguson and his transí errees; Jule W. Parks uiitil his death and then to his heirs and widow, in conformity with the Thrift lease and pooling agreement.
 

 The widow and heirs of Jule W. Parks contended that they were entitled to all the royalties accruing from the 20 acre tract ■of land on the ground that the Thrift lease had been abandoned as to this tract of land by both the lessors and the lessee. They ■also plead the prescription of ten years on the ground that the 20 acre tract was non-contiguous and that the servitude had not been exercised within that time from the date that the Mayfield No. 1 well was drilled. All the other land owners under the Thrift lease contend that the royalties should be paid under the terms of the Thrift lease and pooling agreement.
 

 Upon trial the lower court gave judgment ordering the royalties to be paid in accordance with the provisions of the Thrift lease and pooling agreement. The widow and heirs of Jule W. Parks have appealed.
 

 Counsel for the appellants contend that half of the 15% of the royalty due Ferguson was paid to Elizabeth Mayfield and that this constituted an active breach of the Thrift lease and pooling agreement since the lease and pooling agreement provided for the payment of the 15% to Ferguson. The record does not show what interest Elizabeth Mayfield had in the property, but she was a party to the original lease and we find a copy of a deed in the record dated May 29, 1939, wherein Elizabeth Mayfield and Ferguson executed a deed to Parks covering this 20 acres of land and transferring their royalty interest in the well, Mayfield No. 1, under the Thrift lease, authorizing the payment of royalties, heretofore paid to them, to be paid direct to Parks. We know of no reason why Ferguson, if he saw fit, could not authorize or permit, with his consent, the payment of a portion of his royalties to whom he saw fit. There is nothing in the record to show that the payments made to Elizabeth Mayfield were made without Ferguson’s consent. The division of Ferguson’s royalty interest did not affect .the other land owners’ rights and no one could have been concerned but Ferguson himself. If he was satisfied, we do not see how anyone else could complain. The appellants were not affected by it because they have continually been receiving the 15% under the terms of the Thrift lease and pooling agreement.
 

 The record shows that the present lessee is the owner of two other leases covering this 20 acre tract of land, one executed by Ferguson and one by Parks. It also shows that Emma Simms executed a lease on her tract of land, covered by the Thrift lease, in favor of one of the lessee’s ancestors in title after the confection of the pooling agreement. However, there has been no lease executed by Corinne Smith, other than the Thrift lease and pooling agreement.
 

 
 *1079
 
 The appellants contend that the 'lessee abandoned the Thrift lease insofar as the 20 acre tract of land was concerned when he acquired the subsequent leases on that tract of land. We do not know just why these subsequent leases were acquired but, be that as it may, it cannot affect the validity of the Thrift lease and pooling agreement. The Thrift lease is an indivisible contract. It treats the land owners as a lessor. The consideration provided for therein is a gross sum of money for the privilege of searching for oil and gas on all the lands embraced therein and it is impossible to say that the lessee would have paid a proportionate consideration on only a portion of the land. It is not stated therein what portion of the consideration was paid to each landowner. The lessee agreed to pay one-eighth of the gas based on
 
 7>‡
 
 per thousand cubic feet without stating the proportion „each of the landowners were to receive. The landowners joined in one contract in consideration of the advantages to be derived for their common benefit. Such being the case, the contract is joint and indivisible. Cochran et al. v. Gulf Refining Company of Louisiana, 139 La. 1010, 72 So. 718; Nabors et al. v. Producers’ Oil Company, 140 La. 985, 74 So. 527, L.R.A.1917D, 1115.
 

 The Nabors case has been cited with approval on a number of occasions by this Court. Since the parties to the original Thrift lease joined in an indivisible contract, their successors in title are bound by its terms. The contract, being indivisible, contemplates that if the whole of one side of the contract was to be fulfilled, likewise the whole of the other side should be fulfilled. It is well settled that a party to an indivisible contract, such as a joint mineral lease, who had disposed of part of the property subject to the lease thereby rendering it impossible to dissolve it as to all the property and restore matters to' the same situation as though no contract had been made, cannot maintain an action against the other parties to the contract to dissolve it; Nabors et al. v. Producers Oil Company, supra. In this case the appellants by subsequently leasing the 20 acres of land cannot under this principle of láw maintain an action to dissolve the contract in whole or in part.
 

 Moreover, the appellants having enjoyed the benefits flowing from the Thrift lease by continually receiving the royalties from the Mayfield No. 1 well are forever barred from making any attack on the validity of the lease. They cannot accept the benefits flowing from the lease and reject the liabilities thereunder. Brown v. Sugar Creek Syndicate, 195 La. 865, 197 So. 583.
 

 We have had occasion to pass on contracts of a similar nature to that of the Thrift lease on several occasions. When the land or mineral owners enter into a joint contract integrating their mineral interest by creating a joint lease for the development of the leased property, the
 
 *1081
 
 law of contracts governs as long as the lease is kept alive under its terms. We know of no law preventing parties from entering into a contract wherein they pool their interest for their common benefit. When they enter into a contract and agree to unitize an entire tract of land, composed of contiguous and noncontiguous tracts of land, the contract is indivisible and the land is treated as a whole. Contracts of this nature have been considered valid and binding in the cases of Brown v. Sugar Creek Syndicate, 195 La. 865, 197 So. 583; Robinson v. Horton et al., 197 La. 919, 2 So.2d 647; Louisiana Canal Company Inc. v. Heyd, 189 La. 903, 181 So. 439, 116 A.L. R. 1260; French et al. v. Querbes et al., 200 La. 654, 8 So.2d 631; Veeder Company, Inc. v. Pan American Production Co. et al., 205 La. 599, 17 So.2d 891 and Dobbins et al. v. Hodges, 208 La. 143, 23 So.2d 26.
 

 The original Thrift lease is a joint obligation and the pooling agreement merely clarifies the contract by determining the percentage each landowner is to receive. It does not add to or take away from the original contract.
 

 The appellants are under the impression that the failure to drill on the 20 acre tract within ten years from the date of the Thrift lease constitutes a failure to exercise the mineral servitude and the land being noncontiguous the Thrift lease is prescribed insofar as that tract of land is concerned. Counsel cites Arent v. Hunter, 171 La. 1059, 133 So. 157. The case cited by counsel is not applicable for the reason that no joint contract was involved therein. The rights of the parties in this suit are not governed by the law of servitude but by the law the parties made for themselves in a joint and indivisible contract. They provided in their contract that the production on any part of the land would keep the lease alive as to the whole. Having so contracted, they are bound by their own agreement.
 

 For the reasons assigned, the judgment is affirmed at appellants’ cost.
 

 • O’NIELL, C. J., absent.
 

 ROGERS, J., takes no part.