(99 South. 600)

No. 24252.

### ARDIS v. TEXAS CO.

(March 17, 1924.)

*(Syllabus by Editorial Staff.)*

1. Mines and minerals ⬤⟿78(2)—Development of one of two separately described tracts leased as one held sufficient to prevent forfeiture of oil lease.

In a suit to cancel an oil lease for failure to develop a portion of the tract leased which was separated from the portion actually developed by a railroad track and right of way, where it appeared that the two bodies of land had been leased as one tract, but described separately, development of one of them was a compliance with the contract as to the entire lease.

2. Mines and minerals ⬤⟿78(2)—Development held sufficient to prevent cancellation.

Where 17 producing wells had been drilled on leased property, but all on one of two tracts and the wells drilled in the portion lying toward the tract not developed were less productive than the others, held, that the development was sufficient to prevent cancellation, there being no danger of others drawing from the undeveloped land any oil or gas beneath its surface.

Appeal from First Judicial District Court, Parish of Caddo; E. P. Mills, Judge.

Suit by J. B. Ardis against the Texas Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Pugh & Boatner, of Shreveport, for appellant.

Hampden Story, of Shreveport, for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

OVERTON, J. This is a suit to annul part of a mineral lease on the ground that there has been no development with respect to a part of the property leased, and in the event the prayer for annulment is not granted then for damages for failure to develop the property fully.

It appears that, in 1912, J. B. Ardis, the plaintiff herein, was the owner of certain land situated in the parish of Red River. The land in question is intersected by the Texas & Pacific Railroad, which, at that point, runs north and south. Whether the railroad company owns the fee to the strip which it occupies, or whether it owns only a servitude, attached to that strip, does not appear.

On the last day of December, 1912, Ardis sold to R. A. Calhoun the land in question, but retained the mineral rights in and to the same. In this deed, the land conveyed is described and referred to as if it consisted of two tracts, one situated on the east side of the railroad and containing 222.29 acres, and the other on the west side, and containing 229.86 acres. In May, 1913, Ardis granted a mineral lease on the land in question to the Producers' Oil Company. In this lease, the land let is referred to, in describing it, as consisting of two tracts, one east and the other west of the railroad, as in the deed to Calhoun. This lease was later transferred to the Texas Company, the defendant herein.

Not long after the execution of the lease, and before it was thought cause had arisen for its forfeiture, the lessee, or its assignee, began drilling for oil and gas. The first well was completed on July 17, 1914, proved successful, and produced in the beginning 200 barrels of oil a day. Between the date of the completion of the first well and June 13, 1916, 16 additional wells were drilled. The initial production of these wells, each taken singly, ranged from 10 to 1,440 barrels a day. The number of wells drilled a year, during the foregoing period, ranged from 5 to 7. From the time of the completion of the first well, in July, 1914, up to October, 1919, which was a few days prior to the institution of this suit, there were delivered to plaintiff, as royalty due under the lease, 94,847 barrels of oil, or the proceeds thereof, amounting to $81,258.77. All of the foregoing wells were drilled on the tract lying east of the railroad, and no effort was made to drill on the tract lying west of it. The initial production of the wells drilled shows that, as the development appreciably approached the western part of the east tract, there was a decline in production, which, upon the whole, was very marked and noticeable.

About the time this suit was filed plaintiff could have leased his rights in the tract situated west of the railroad for $50 an acre. He made demand on the defendant to surrender the lease on the western tract, or else to develop that tract, but defendant refused to do either. This suit then followed for the purpose of obtaining the annulment of the lease on the west tract on the ground of failure to explore for oil and gas thereon, and, should the court not grant that prayer, then to obtain judgment against the Texas Company for $11,493, as damages for failure to develop the tract.

One of plaintiff's contentions is that the land upon which the lease was granted consists of two independent tracts, separated from each other by the strip occupied by the Texas & Pacific Railroad Company, and this fact is used by plaintiff in support of his position that the land west of the railroad should have been explored for oil and gas, as well as that east of it. While it is possible that the railroad company does not own the fee

ARDIS v. TEXAS CO.

to the strip occupied by it, but only a servitude on that strip, and that, in reality, for all purposes, the land should be viewed as one tract, burdened with a servitude, and not as two tracts, separated from each other by a narrow strip, owned by the railroad, yet for the purposes of this suit we shall consider the land as consisting of two tracts, separated from each other, at the time of the execution of the lease. However, the lease treats the land in all respects as one tract, although, in describing it, it describes it as consisting of two, and refers to it as such in computing the number of acres leased. That the lease treats the land as one tract appears from the fact that it provides that, if a well shall not be commenced within one year from the date of the instrument, the rights granted by the contract shall be forfeited, unless certain payments be made, and from the further fact that it also provides that if the lessee, or its successors or assigns, should drill a well and discover oil or gas within the time fixed, then the contract shall remain in full force for 20 years from the discovery of the product, or for as much longer as oil or gas is found in paying quantities. It will be observed that it is not required that a well should be commenced on each tract within a year to prevent a forfeiture, nor is it provided that, in the event a well should be drilled which proves successful, the bringing in of the well should have the effect of continuing the contract in force for 20 years and longer, in respect only to the tract upon which the well is brought in; but the instrument is so worded as to make the successful effort affect both tracts alike, exactly as if they constituted one tract in every particular. Had it been intended that the two tracts should be treated as distinct in the construction and execution of the contract, one would expect to find language conveying such intention, and not words expressing clearly and unmistakably an intention direct-

ly to the contrary. Hence, having treated the land as constituting one tract for the purpose of the contract, plaintiff is bound by his act as between him and the defendant herein, and defendant, in developing the land, had a right to so treat it, and we, ourselves, should so view it, in deciding the case.

[1, 2] Considering the two bodies of land as one tract within the intendment of the lease, we have no hesitancy in holding that there has been a compliance with the contract, unless it be that defendant has failed to comply with the implied condition, existing in it, to continue the development of the property to such extent as may be reasonably necessary in both his and plaintiff's interest. In deciding this phase of the case, it is unnecessary, from our finding of fact, to consider whether an oil and gas lease may be annulled by reason of the failure to comply with one of its implied conditions. We think that defendant has sufficiently complied thus far with the conditions as to development. In this connection, it will be recalled that 17 wells that produce oil have been drilled on the property. It will also be recalled that the wells drilled in the western part of the east tract proved to be far less productive than these drilled in the eastern part of it. The difference is such, we think, especially when the outlay necessary in sinking a well is taken into account, as to have fully justified defendant in not attempting to drill on the west side of the tract. It may be observed also that up to the time of the trial of this suit only two wells had been drilled on the tracts abutting that part of plaintiff's property, lying west of the railroad. These were apparently drilled for gas, and are nonproductive. Hence, at the time this suit was filed, there was no danger of others drawing from the land, west of the railroad, any oil or gas beneath the surface, if there was any beneath it. This is a circumstance which we may consider in decid-

ing the issue before us. Under the facts submitted, our conclusion is that the development was sufficient. This ruling has the effect, we may here say, of disposing of plaintiff's demand for damages, which, as we have observed, is based on the ground that there was a failure to reasonably develop the property.

For the reasons assigned, the judgment appealed from is affirmed, appellant to pay the costs.