18 So.2d 314

VEEDER v. PAN AMERICAN PRODUC-
TION CO. et al.

VEEDER et al. v. SAME.

Nos. 37033, 37035.

April 17, 1944.

Rehearing Denied May 22, 1944.

See also, 205 La. 599, 17 So.2d 891.

Liskow & Lewis, of Lake Charles, and Rene H. Himel, of Franklin, for defendants-appellants.

L. O. Pecot, of Franklin, and K. C. Barkley, of Houston, Tex., for plaintiffs-appellees.

ODOM, Justice.

The issues involved in these two cases are identical. They were consolidated and tried together in the district court and were argued together in this court. We shall dispose of the two cases in one opinion.

George T. Veeder, plaintiff in Suit No. 37033, owns individually two tracts of land in St. Mary Parish, which tracts are not contiguous. George T. Veeder et al., plaintiffs in Suit No. 37035 (these plaintiffs being the eight heirs of John W. Veeder), own in indivision two tracts in the same parish. Their two tracts are not contiguous. The two tracts owned by George T. Veeder and the two owned by George T. Veeder et al. are parts of a larger tract of 1336.29 acres in St. Mary Parish, which larger tract is owned by these plaintiffs and the A. Veeder Company, Inc.

On July 7, 1932, these plaintiffs, joined by the A. Veeder Company, Inc., executed an oil and gas lease in favor of Roy B. Siler. On August 30, 1932, Siler transferred it to John R. Black and A. T. Schwennesen, and from them the entire interest in the lease passed by mesne conveyances

to the Pan American Production Company et al., the defendants in these cases.

The primary term of the lease was five years from January 2, 1933, during which time it could be kept alive by the payment of delay rentals. It was kept alive during its primary term, and on or about May 10, 1937, which was within the primary term of the lease, the Pan American Production Company, assignee of the lease, began drilling for oil on a portion of the land leased. This well was abandoned as a dry hole, but immediately thereafter the defendant began the drilling of another well, which was completed as a producer on January 1, 1938, which was within the primary term of the lease.

This producing well was drilled on one of the tracts of land owned by George T. Veeder, the plaintiff in Suit No. 37033. No drilling operations were ever begun on the other tract owned by him, which other tract, as we have said, was not contiguous to the one developed.

On March 9, 1938, a well producing oil was completed on one of the tracts of land owned by George T. Veeder et al., plaintiffs in Suit No. 37035. But no drilling operations were ever begun on the other tract owned by them, which other tract is not contiguous to the one developed. These wells are still producing oil, and the plaintiffs have all the while received the royalties due them.

These two suits were filed on the same day, September 12, 1940. In both cases the plaintiff or plaintiffs are seeking to have canceled and erased from the records of St. Mary Parish the mineral lease referred to, insofar as it covers or affects the tracts of land owned by them which have not yet been developed for minerals.

In his petition on Suit No. 37033, George T. Veeder, after specifically describing his tract of land which had not been developed for minerals, made the following allegation which set forth his cause of action:

"That the said lease on the above described land terminated by reason of the expiration of the primary term of five (5) years on July 7, 1937, without same having been drilled or either oil or gas produced therefrom."

In their petition, the plaintiffs in Suit No. 37035, after describing their tract of land which had not been developed for minerals, alleged:

"That the said lease on the above described land terminated by reason of the expiration of the primary term of five (5) years on July 7, 1937, without same having been drilled or either oil or gas produced therefrom."

The defendants in answer to each of these suits admitted that the tract of land specifically described in each of the petitions had not been developed for minerals, but alleged that, before the expiration of the primary term of the lease referred to, other portions of the land covered by the lease contract had been developed; that 26 wells had been drilled on the lands described and affected by the lease contract referred to in plaintiffs' petitions, and that 22 of said wells had produced oil in paying quantities, and that oil in paying quantities had been continuously produced from said land since December 31, 1937, and was be-

ing produced at the time of the filing of these suits; that the lease contract dated July 7, 1932, referred to in plaintiffs' petitions, described and related to lands of the plaintiffs and lands of other lessors therein named.

The defense set up by the defendants was that, although there had been no development, within the primary term of the lease, of the particular tracts of land involved in these suits, yet, since other portions of the land covered by the lease contract had been developed within the primary term of the lease and since oil had been produced therefrom in paying quantities, under the specific provisions of the lease contract, which was executed and signed by these plaintiffs along with others, the production of oil or other minerals from any portion of the land covered by the lease was sufficient to keep the lease alive as to all portions of the land, whether developed or not.

There was judgment in each case ordering the lease cancelled as prayed for, and from these judgments the defendants appealed.

The mineral lease involved in these two cases is the same lease which was discussed at length and in great detail by us in the case of A. Veeder Co., Inc., v. Pan American Production Co. et al., La.Sup., 17 So.2d 891. In that case we pointed out that the lease contract provided that, if minerals were produced within the primary term, the lease was to remain in full force and effect as long as minerals were produced in paying quantities. As shown by the record, it was executed by the A. Veeder Company, Inc., a corporation,

which was plaintiff in that suit, and by the heirs of John W. Veeder, deceased, who are plaintiffs in Suit No. 37035, and by George T. Veeder individually, who is plaintiff in Suit No. 37033. These parties all acted together in making the lease and were referred to as " 'Grantor' (whether one or more)". The lease was made in favor of Roy B. Siler, "hereinafter called 'Grantee' ". The lease conferred upon the grantee "the exclusive right to explore the land hereinafter described for mineral indications, to drill and mine thereon for oil, gas, sulphur and other minerals, and to produce and appropriate any or all of the same therefrom".

We here quote the following from the lease contract:

"The land is in St. Mary Parish, Louisiana, and is described as follows:

"Thirteen Hundred Thirty Six and 29/100 (1336.29) acres more or less of land out of Township 13, South, Ranges 9 and 10 East, Southeastern Land District, St. Mary Parish, Louisiana in Ten (10) tracts, more fully described as follows, to-wit."

The lease contract contains this clause:

"For the purpose of calculating the payments hereinafter provided for, *the land* is estimated to comprise 1336.29 acres, whether *it* actually comprises more or less. *All land owned by the Grantor* in the above mentioned surveys or sections is included herein, whether properly described above or not." (Italics are the writer's.)

■ As we stated in the case of A. Veeder Co., Inc., v. Pan American Production Co. et al., the fact that the lease was granted "by the A. Veeder Company, Inc.,

by the heirs of John W. Veeder, deceased, and by George T. Veeder, individually, as ' "Grantor" (whether one or more)' gives rise to the inference that the entire tract leased was owned by them jointly and in indivision. However, the original lease dated July 7, 1932, as amended as to description on January 17, 1935. The various smaller tracts described in the original lease were redescribed in the amendment as 15 tracts instead of 12, and it was stated that the A. Veeder Company owned individually 12 of these 15 tracts of land, and that the heirs of John W. Veeder and George T. Veeder owned the other three tracts."

In the supplemental and amended agreement entered into on January 17, 1935, in which the land covered by the lease was redescribed, it was stipulated that George T. Veeder, plaintiff in Suit No. 37033, was the owner of Tract 9 and the north half of Tract 11, as redescribed, and that the heirs of John W. Veeder, plaintiffs in Suit No. 37035, were the owners of Tract 10 and the south half of Tract 11, as redescribed.

As already stated, one of the tracts owned by George T. Veeder, plaintiff in Suit No. 37033, was developed by the production of oil therefrom—the north half of Tract 11—, and that one of the tracts owned by the John Veeder heirs, plaintiffs in Suit No. 37035, was developed by the production of oil therefrom—the south half of Tract 11. Thus George T. Veeder now seeks to cancel the lease in so far as it covers or affects Tract 9 owned by him, and the other plaintiffs are seeking to cancel the lease in so far as it covers or affects Tract 10 owned by them.

The two tracts involved in these suits are a part of the original tract of 1336.29 acres covered by the lease contract executed jointly by the plaintiffs in these suits and by the A. Veeder Company, Inc.

In the suit of A. Veeder Co., Inc., v. Pan American Production Co. et al., previously decided by us, it was alleged by the plaintiff, and admitted by the defendants, that no part of the land covered by the lease and owned by the plaintiff in that case had ever been developed by the production of oil or any other mineral therefrom, and the plaintiff alleged as a cause of action that, since that was true, the lease should be cancelled and erased from the records in so far as it affected the lands owned by the plaintiff corporation. But we held that, according to the terms of the lease, the production of oil from any part of the land, regardless of its ownership, was sufficient to keep the lease alive as to every portion of the land covered by it. In that case we said:

"A reading of the original lease shows beyond question that it was a joint lease as to both grantors and grantee. It was a joint lease in the true sense. The A. Veeder Company, which is a corporation, and the several individuals who, with the corporation, owned all of the land covered by the lease, all of whom were called ' "Grantor" (whether one or more)', acted as one in granting the lease; they acted unitedly; they bound themselves together as one individual; what one did each and all did. The land covered by the lease was treated as one tract. The recitals and declarations in the lease were not made by the corpora-

tion and the individuals separately; they were made unitedly and as one. Acting unitedly and as one, what they, in effect, said to the lessee was that, if he or his assigns should succeed in producing minerals 'on the land' in paying quantities, his 'rights shall [should] remain in effect so long as any of such minerals are [were] produced in paying quantities from the land'. 'The land' referred to was the land covered by the lease—not a part of it, but all of it. This was clearly the intent of the parties, as shown by various clauses and phrases in the lease, one of which recites that the grant should terminate on a certain date unless, on or before that date, the grantee should elect by written notice to the grantors 'to either drill *a well on some part of the land* embraced herein' or pay grantors a certain sum of money on a certain date. The phrase 'on some part of the land embraced herein' clearly means that the development of any part of the land for minerals would perpetuate the lease as to each and every portion of the land covered by the contract. The land covered by the lease was described first as one large tract of 1336.29 acres, which large tract was subdivided for the purpose of description into 12 smaller tracts. The contract repeatedly refers to the property involved as 'the land', and, in speaking of minerals, it refers to the minerals 'in the land' or 'on the land.'

"The lease provides also that, if a well producing as much as 200 barrels of oil per day for 30 consecutive days is brought in on adjacent land and within 200 feet 'of any line of the land, then held hereun-

der' (meaning, of course, any of the land held under the lease), then the grantee should with reasonable promptness begin, and with reasonable diligence prosecute, 'the drilling of a well on the land, then held hereunder'. The phrase 'within 200 feet of any line of the land' necessarily means the line of any tract of the land, and the phrase 'prosecute the drilling of a well on the land, then held hereunder' necessarily means the drilling of one well on any portion of the land."

The ruling in that case is decisive of the issue involved in the two cases presently under consideration. The same lease contract, the same parties, the same land involved in that case are involved in these cases, and, since all of the land owned by the plaintiffs in these cases (including the tracts developed and those not developed) was covered by the joint lease executed by them and the A. Veeder Company, Inc., it follows necessarily that, under the ruling in that case, the development of one of the tracts owned by George T. Veeder perpetuated the lease as to his other tract, and the same is true in the case of George T. Veeder et al.

It is not necessary to repeat here all of the reasons underlying our ruling in the case of A. Veeder Co., Inc., v. Pan American Production Co. et al., or to refer here to the authorities which we cited in support of our ruling in that case. In that case, as in the ones presently under consideration, the question of the effect of the amendment of the original lease, executed by the parties on January 17, 1935, was an issue. In our opinion in that case we discussed that

issue at length and expressed our view as to the effect of the amendment. A further discussion of it here is not necessary. Reference is here specifically made to our opinion and ruling in that case.

We make the following additional observation: Counsel for plaintiffs say in their brief at page 12 that, under the original lease as amended, all parties have so clearly defined their rights "that we submit that the rights of * * * George T. Veeder are just the same as if he had—

"On July 7th, 1932, executed for a five (5) years, five (5) months and twenty-five (25) days primary term, a separate lease on the ninth (9th) tract and the North one-half of the eleventh (11th) tract", and that the rights of George T. Veeder et al. "are just the same as if—

"On July 7th, 1932, they, as lessors, had executed a separate oil and gas lease on the tenth (10th) tract and the South one-half of the eleventh (11th) tract".

In our opinion in the A. Veeder Co. case, we said that we did not concur in this view. However, even if counsel's view be correct, their suits necessarily fall, because, under the ruling in the case of Ardis v. Texas Co., 155 La. 790, 99 So. 600, it was held that, where it appeared that two bodies of land had been leased as one tract but described separately, development of one of them was a compliance with the contract as to the entire lease.

For the reasons herein assigned, and for the reasons assigned in the case of A. Veeder Co., Inc., v. Pan American Production Co. et al., La.Sup., 17 So.2d 891, the judgment appealed from in each of the

cases here under consideration is reversed and set aside, and each of the suits is dismissed at plaintiffs' costs.