**GRELLING et al. v. ALLEN et ux.**

**No. 6416.**

Court of Civil Appeals of Texas. Texarkana.

Jan. 20, 1949.

Rehearing Denied Feb. 17, 1949.

Gist & Wilson, of Sulphur Springs, for appellants.

Ramey & Ramey, of Sulphur Springs, I. E. Beavers, of Winnsboro, and R. T. Wilkinson, Jr., of Dallas, for appellees.

HARVEY, Justice.

G. W. Allen and wife sued Magnolia Petroleum Company and W. P. Chandler, W. M. Chandler, and Tom Worsham, and also L. A. Grelling, Maurice Shamburger, and Murph Wilson, seeking a construction of royalty conveyances made by Allen and wife covering royalty on land situated in the Pickton Oil Field in Hopkins County, Texas. Upon a trial before the court judgment was entered construing royalty conveyances in favor of Allen and wife and against Grelling, Shamburger, and Wilson; in addition, the judgment construed other royalty deeds in controversy against Allen and wife and in favor of the defendants W. P. Chandler, W. M. Chandler, and Tom Worsham. It was agreed by all the parties at the time of the trial that the Magnolia Petroleum Company was the owner of a valid oil and gas lease on the land involved in the suit. From the judgment entered against them Grelling, Shamburger, and Wilson have perfected an appeal to this court.

On January 31, 1941, G. W. Allen and wife executed and delivered to the Magnolia Petroleum Company an oil and gas lease in which was described five contiguous tracts of land forming one general body totaling 88.5 acres. Thereafter, on April 12, 1943, he and his wife conveyed to W. P. Chandler an undivided 10 acre royalty interest over a spread under the 88.5 acres described in the lease, but they specifically excepted therefrom any interest in royalty under tract No. 3, which was a 28 acre tract. The form used in making the royalty conveyance was a regular Texas Standard Form, 91-Royalty Deed (Non-Participating). W. M. Chandler and Tom Worsham by assignments from W. P. Chandler acquired a one-third interest each in the 10 acres conveyed to him by Allen and wife. G. W. Allen and wife also sold to McCrary, and others, at different times, 13 royalty acres under the 28 acre tract referred to in the lease as tract No. 3, which by proper assignments were acquired by Grelling, Shamburger, and Wilson. The Magnolia Petroleum Company divided the 88.5 acres embraced in their lease into two drilling units in accordance with the spacing regulations of the Texas Railroad Commission in effect in the Pickton Oil Field at the time the Magnolia Petroleum Company drilled wells on their leasehold interest, which rules provided that not more than one well be drilled on each unit of 40 or more acres of land. Two wells were drilled on the 88.5 acre lease by Magnolia Petroleum Company, both wells being located upon tract No. 3. All of the original royalty deeds from Allen and wife contained the same clauses and verbiage except as to the number of royalty acres sold, names of grantees, dates, and the land description. Therefore, it is only necessary to quote herein the pertinent clauses from one of such deeds, and the deed from which we quote was one from Allen and wife to R. C. McCrary, reading as follows:

"Have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver, unto the said grantee, an undivided 5 acre royalty interest in and to all the oil royalty, gas royalty, and royalty in casinghead gas, gasoline, and royalty in other minerals in and under, and that may be produced and mined from the following described lands situated in the County of Hopkins and State of Texas, to-wit:"

(Which was followed with a description of the 28 acre tract of land)

"Together with the right of ingress and egress at all times for purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom. This grant shall run, and the rights, titles and privileges hereby granted shall extend to Grantee herein, and to Grantee's heirs, administrators, executors and assigns, for a period of fifteen (15) years from date hereof and as long thereafter as oil, gas or other minerals, or either of them is produced or mined from the lands described herein, in paying or commercial quantities. If at the expiration of said fifteen (15) years from date hereof, oil, gas or other minerals, or either of them is not being produced or mined from said land or any portion thereof in paying or commercial quantities, this contract shall be null and void and the Grantee's rights hereunder shall terminate.

"Said lands, or portions thereof, being now under oil and gas lease executed in favor of any lease of record it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes 5 acre royalty interest of all the oil royalty, and royalty from other minerals or products, due and to be paid under the terms of said leases."

In the conveyances from Allen and wife covering the royalty which was acquired by Grelling, Wilson and Shamburger the same granting and term clauses were used as in the deed above quoted, and the land described is the 28 acre tract. The contention of Allen and wife is that under their royalty deeds Grelling, et al., acquired a 13/88.5 interest in the royalties produced from the entire tract of 88.5 acres; Grelling and others, urge the point that since their 13 royalty acres were sold out of the 28 acre tract that they are entitled to receive 13/28ths of the royalty produced from that particular tract. W. P. Chandler and his assigns, who acquired 10 royalty

acres out of the 88.5 acres leased to the Magnolia Petroleum Company, excepting the 28 acre tract, take the position that they are entitled to participate in the royalty produced from the 28 acre tract in the percentage that their 10 acre interest bears to the entire body of land covered by the lease; that is, 10/88.5 interest.

We think that the royalty conveyance hereinabove set out, under a reasonable construction, in the granting clause conveys an undivided royalty interest in the minerals produced from the 28 acre tract for a period of fifteen years, irrespective of any existing lease. In addition, in the last paragraph above quoted, a royalty interest to be paid under the existing lease is conveyed. Should the existing lease lapse, then for a period of fifteen years the grantees would have a royalty interest paid under any future lease on minerals produced from the 28 acre tract within the fifteen year period. The last clause, supra, specifically provides that the sale is made subject to the terms of an existing lease, but includes a royalty interest on "all the royalty * * * to be paid under the terms of said lease." Since Grelling, and others, own 13 acres of royalty under the 28 acre tract, but subject to the terms of a lease existing at the time of the acquisition of such royalty interest, the said Grelling, and others, are entitled to be paid 13/88.5 royalty interest rather than 13/28ths interest. Under this construction of the clauses of the royalty deeds in question there is no repugnancy between the granting clause and the last clause quoted. We might assume a situation in which Allen, after leasing his 88 acres of land comprising the five adjoining tracts, divided the entire tract into eighty-eight parcels of one acre each, and thereafter sold the eighty-eight parcels to various persons, subject to the lease covering the eighty-eight acre tract. It would hardly be logical, in the event that a producing well was drilled on one of such one acre tracts, that the owner of such tract would be entitled to all of the royalty produced from that well. We think that under such circumstances all of the owners of the one acre tracts would participate in the royalty produced from a well drilled on any portion of the subdivided large tract.

Another reason why all of the royalty owners in the instant case participate in the production on the eighty-eight acre tract in the proportion that each one's interest bears to the entire 88 acres, is that each one bought subject to the existing lease. The lessee under his contract was not bound to drill on any particular portion of the land covered by his lease and was limited to the drilling of not more than two wells. Furthermore, the lessee was not obligated to keep separate records as to the amount of oil produced from each tract, nor to run oil therefrom into separate tanks; such lessee was required only to keep an account of the oil produced from the 88.5 acres as an entirety. The lessor by subsequent deeds or contracts could not burden his lessee beyond the provisions of his lease. The decision in Japhet v. McRae, Tex.Com.App., 276 S.W. 669, relied upon by appellants, does not rule the instant case because land in that case was sold in fee, subject to an oil lease, without any apportionment of royalty that might be paid under the terms of the lease. The case of Hoffman v. Magnolia Petroleum Company, Tex.Com.App., 273 S.W. 828, 829, while not identical with the facts in the instant case, is more analogous to it than the Japhet v. McRae case. In the Hoffman case, in which a deed conveyed to the plaintiff an undivided one-half interest in all the minerals in a described 90 acre tract, subject to a lease which covered 320 acres, and conveyed one-half of all royalties "due to be paid under the terms of said lease", the Supreme Court of Texas, through the Commission of Appeals, held: "The Court of Civil Appeals correctly decided that, under this lease, a subdivision of the land would not affect the rights and obligations of the lessee— that the purchaser occupies no better position than his vendor does. As to the lessee the lease remained an entirety, as did his duty to pay rents and royalties. The deed said the 90 acres was subject to the lease. It was. But a conveyance of a part of the land did not subdivide the lease and turn it into two leases, one upon

the 90 and the other upon the remaining 320. There was therefore no lease covering solely 90 acres, and, when the deed refers to the 'lease,' it can only refer to the lease on the whole 320 acres."

The court held that the first part of the deed conveyed an undivided one-half interest in the minerals in place under the 90 acre tract; that the subsequent portion of the deed referring to the fact that the sale of said interest was made subject to an existing lease, conveyed a one-half interest in the royalty to accrue under the terms of the lease as an entirety; that is, upon the entire 320 acre tract. The reasoning in the case of French v. George, Tex.Civ. App., 159 S.W.2d 566, wherein several owners of contiguous tracts of land united in an oil lease to another party and in such lease the royalty produced was to be paid to the lessors, where the court held that the royalty should be divided among the lessors in the proportion that their respective lands bore to the total acreage covered by the lease, is applicable to the situation herein under consideration.

In the case herein under consideration there was a lease to the Magnolia Petroleum Company of the 88.5 acre tract; in it there were no words providing for a unitization of said acreage. However, under the spacing regulations of the Texas Railroad Commission providing for not more than one well to be drilled on each 40 acres of land in the Pickton Field in Hopkins County, the lands embraced in the lease in question were subject to unitization as a matter of law; that is, a maximum of two wells could be drilled on the 88.5 acre tract. A well could not have been drilled on less than 40 acres; portions of several different tracts making up the 88.5 acre tract under lease were necessary to form units for the purpose of drilling the two wells. Consequently, the owner of royalty under any part of the land under lease herein was entitled to only the proportional interest that the royalty owned by him bore to the total acreage covered by the lease. An individual royalty owner is not entitled to all of the royalty from a producing well merely because the well is located on the royalty acreage purchased

by him, which acreage was subject to a pre-existing lease at the time of the purchase. What we have said herein relative to the interests of Grelling, and others, is applicable as well to the interests of Chandler, and others.

The judgment of the trial court is affirmed.