SOUTHLAND ROYALTY COMPANY et al.,
Appellants,

v.

O. D. O'DANIEL et al., Appellees.

No. 3219.

Court of Civil Appeals of Texas.

Eastland.

Feb. 3, 1956.

Rehearing Denied Feb. 23, 1956.

Ben G. Smith, Ft. Worth, R. H. Ratliff, Colorado City, for appellants.

John A. Coffee, Big Spring, for appellees.

GRISSOM, Chief Justice.

In June, 1925, M. H. O'Daniel and wife executed an instrument, usually referred to in the record as a mineral deed, which purported to convey to G. T. Hall one-half the minerals in Section 39, Block 30, Township 1–S of the T & P Railroad Company Survey in Howard County, subject to an outstanding oil and gas lease, with a provision that none of the delay rentals were to be paid the grantee. It concluded with the statement that this "transfer does not carry perpetual ownership and holding of royalty" but that such holding and ownership should continue "as long as there shall be production under the outstanding lease or any other lease that shall be executed within twenty-five years from the date hereof." Omitting the formal parts, signatures and acknowledgements it is as follows:

"That we, M. H. O'Daniel and wife A. E. O'Daniel, wife of the said M. H. O'Daniel, of Howard County, in the State of Texas, for and in consideration of the sum of One Thousand Nine Hundred Twenty Dollars to us in hand paid by G. T. Hall, receipt acknowledged, have, and do by these presents, Grant Bargain, Sell and Convey, *Set-Over*, Assign and Deliver unto the said G. T. Hall, also of the County of Howard, State of Texas, the following to-wit:

One Half (½) interest in and to all the oil, gas and other minerals in and under and that may be produced from the following described lands situated in Howard County, Texas, to-wit:

| Sec. | Blk. | Tsp. | Grantee | Ares. |
|------|------|------|---------|-------|
| 39 | 30 | 1–S. | T & P Ry. Co., | 640. |

Together with the rights of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals, and removing the same therefrom.

"Said above described lands being now under oil and gas lease executed in favor of the Marland Oil Company, and now held by it, it is understood and agreed that this sale is made subject to said lease, but covers and includes One-Half of the One-Eighth Oil Royalty, Gas rental and royalty due and to be paid under terms of said lease.

"It is understood and agreed that none of the money rentals which may be paid to extend the terms within which a well may be begun under the terms of said lease is to be paid to said G. T. Hall, but if said lease shall, for any reason, be cancelled or forfeited, then and in that event, the lease interest on said land for oil and gas mining privileges shall be jointly owned by M. H. O'Daniel and G. T. Hall, each owning a One-Half Interest in all Oil, Gas and other Minerals in said land. *While this transfer does not carry perpetual ownership and holding of royalty, such holdings and ownership, with privileges and benefits thereto, whether specifically stated or not, shall continue as long as there shall be production under outstanding lease or any other lease that shall be executed within Twenty-Five years from the date hereof."*

At the same time the O'Daniels executed another instrument purporting to convey to Hall one-half the minerals in Section 34 in the same block. With the exception of the number of the section and the amount of consideration the instruments are identical. On July 16, 1925, the grantee in said two deeds conveyed to Southland Royalty Company all right, title and interest acquired by him by virtue of said instruments. Said instruments were referred to therein as mineral deeds subject to an outstanding oil lease in favor of Marland Oil Company.

On November 24, 1925, M. H. O'Daniel and wife executed another deed to Hall which purported to correct the two June deeds by, among other things, conveying in one deed one-half the royalty in both of said sections instead of one-half the min-

erals purported to be conveyed in the two June deeds. Omitting the formal parts, signatures and acknowledgements it is as follows:

"That we, M. H. O'Daniel and wife, A. E. O'Daniel, of the County of Howard, State of Texas, have and by these presents do Grant, Bargain, Sell Convey, Set over and assign and deliver unto G. T. Hall the following, to-wit:

"One-Half (½) interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described land.

situated in Howard County, Texas, to wit:

Section 34 and 39, (Thirty-four) and thirty-nine) Block Thirty (30), Township 1, South, T & P Railroad Company Survey. *It is understood and agreed, however, that this deed shall remain in force for a period of Twenty (20) years and as long thereafter as oil, gas and other minerals is produced on said lands in paying quantities.* It is expressly understood between the parties that the vendor is the owner of all of the royalty that the grantee is purchasing one-half (½) of the royalty (viz., One-Sixteenth—1/16 of the minerals) produced in and from wells or other operations situated on the specific tract of land described in this instrument, together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals, and removing the same therefrom.

"And the said described lands being now under an oil and gas lease originally executed in favor of Marland Oil Company of Texas and the Texas Company, it is understood and agreed that this sale is made subject to said lease, but covers and includes one-half of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease.

"It is agreed and understood that none of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said grantee and in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event, the grantor, his heirs, administrators executors and assigns agree to lease the land for oil and gas mining purposes; said oil and gas mining lease shall provide for the payment of a royalty of one-eighth (⅛) part of all oil produced and saved from the lands above described and delivered free of cost in the pipe line, and a royalty of One-Eighth (⅛) of the value of natural gas produced from said premises when said gas is sold or used off the premises, or one-eighth (⅛) of the net proceeds of the sale of such gas; providing further that all bonuses and delay rentals payable under any oil and gas mining lease executed either by the grantor or by the grantee upon termination of the present existing lease on said lands, shall be paid to the grantor, the grantee merely owning an undivided one-half (½) interest in and to the royalties on oil, gas and other minerals provided to be paid the lessors under such oil and Gas Mining Lease.

"This sale is made without consideration for the purpose of correcting a former Mineral deed executed by and between the same parties and recorded in Volume—page—Deed records of Howard County, Texas. Sec. 34—in Vol. 56 page—429 Sec. 39—Vol. 56 page 430.

"To Have and To Hold the above described property, together with all and singular; the rights and appurtenances. *therto* in anywise belonging unto the said G. T. Hall, heirs, executors and administrators, to Warrant and forever Defend all and the said property unto the said G. T. Hall his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof."

After execution of said correction deed, on December 2, 1925, Hall executed a deed to one-half the royalty in Sections 34 and 39 to Southland Royalty Company. It followed the form of the November correction deed and contained a provision that "this deed shall remain in force for—(20) years and as long thereafter as oil—is produced on said lands in paying quantities."

O. D. O'Daniel et al. who acquired their title and interest from M. H. O'Daniel and wife, sued Southland Royalty Company et al. who acquired their title and interest from G. T. Hall. Plaintiffs alleged they owned the royalty and minerals in Section 39; they alleged the execution of all of said instruments and that defendants had knowledge of said correction deed and that it was filed for record by Southland Royalty Company. Plaintiffs alleged no minerals were produced from Section 39 prior to January 1, 1955, and that by virtue of the terms of the deeds thereto to Dr. Hall that said term conveyance of royalty, or minerals had terminated. Plaintiffs prayed for judgment that they owned the royalty and minerals under Section 39, for cancellation of the instruments under which defendants claim and removal of cloud from their title.

The essence of the defendants' answers and contentions is that the November correction deed operated as a substitute for, was executed in lieu of and took the place of the two June deeds and that under the terms of the correction deed production of oil on Section 34 within twenty years and continuously thereafter kept alive defendants' royalty interest in Section 39.

The parties agree that the correction deed is unambiguous. They so alleged and so stipulated on the trial. Plaintiffs contention simply is that under the terms of the two June deeds, as corrected by the November deed, production of oil from Section 34 did not continue the royalty interest in Section 39 beyond the primary term. Defendants' contention is that the correction deed in such respect superceded the two June deeds and that under its terms production of oil from either section within the primary term and continuously thereafter had the effect of continuing defendants' royalty interest in both sections.

In a trial to the court judgment was rendered to the effect that defendants' royalty interest in Section 39 had terminated. Defendants have appealed. Appellants contend that the correction deed conveyed one-half of the royalty in both sections for twenty years and as long thereafter as oil is produced "on said lands", that is, from either section, in paying quantities. In support thereof they cite Willeke v. Baily, 144 Tex. 157, 189 S.W.2d 477. Appellees say the correction deed did not constitute a new agreement nor supercede the June deeds and that all of said deeds should be construed together and, when this is done, there is nothing in said deeds which would permit a holding that production on one section would continue the life of appellants' royalty interest in the other beyond the primary terms.

When the June deeds were executed M. H. O'Daniel and wife had already executed a single lease covering both sections to Marland Oil Company and said lease was then in effect. The June deeds each concluded with a provision that it did not carry perpetual holding and ownership of "royalty" but that such ownership and holdings of royalty should continue *as long as there shall be production under outstanding lease or any other lease* that shall be executed within twenty-five years from the date hereof." It is agreed that there was production oil in paying quantities from Section 34 within twenty years and that such production still continues. Under the language of the June deeds the interest conveyed, whether mineral or royalty, was to continue as long as there was production under the then outstanding lease or any other lease executed within twenty-five years. There was but one lease and it covered both sections. As stated, each June deed provided that it was not intended as a perpetual conveyance of "royalty" but that it was a conveyance thereof for as long as there was production under the existing *lease*, which covered both Sections 34 and 39, or any other lease, evidently of the same land, executed within 25 years.

It was not production under any particular section that was to continue the interest conveyed but it was production under the "outstanding lease", which covered both sections, or production under any other "lease", of both sections, executed within 25 years. If this is correct, prior to execution of the correction deed, before plaintiffs would have been entitled to a judgment declaring the interests conveyed by the June deeds terminated they would have had the burden of proving that there was no production under said outstanding lease. The same would have been true as to "any other lease" of the two sections executed within twenty-five years. Under the June deeds it was immaterial from what section covered by such a lease oil was produced in paying quantities.

In Grelling v. Allen, Tex.Civ.App., 218 S.W.2d 896, 898 (RNRE), it was held that where the owners of land executed a lease of five contiguous tracts totaling 88.5 acres and thereafter conveyed to one person an undivided ten acres royalty interest in the 88.5 acres, but excepted therefrom any royalty under a 28 acre tract included in the 88.5 acres, and the land owners then sold to another 13 royalty acres under said excepted 28 acre tract and lessee produced oil from the 28 acre tract, the person to whom the 13 acres royalty interest was conveyed acquired a 13/88.5 interest in the royalty, rather than a 13/28 interest, and the person to whom the ten acre royalty interest was conveyed acquired a 10/88.5 interest therein. The following language of Judge Harvey seems to be applicable here:

"We think that the royalty conveyance hereinabove set out, under a reasonable construction, in the granting clause conveys an undivided royalty interest in the minerals produced from the 28 acre tract for a period of fifteen years, irrespective of any existing lease. In addition, in the last paragraph above quoted, a royalty interest to be paid under the existing lease is conveyed. Should the existing lease lapse, then for a period of fifteen years the grantees would have a royalty in-

terest paid under any future lease on minerals produced from the 28 acre tract within the fifteen year period. The last clause, supra, specifically provides that the sale is made subject to the terms of an existing lease, but includes a royalty interest on 'all the royalty * * * to be paid under the terms of said lease.' Since Grelling, and others, own 13 acres of royalty under the 28 acre tract, but subject to the terms of a lease existing at the time of the acquisition of such royalty interest, the said Grelling, and others, are entitled to be paid 13/88.5 royalty interest rather than 13/28ths interest."

See also Hoffman v. Magnolia Petroleum Company, Tex.Com.App., 273 S.W. 828, 830. We conclude that before execution of the correction deed production of oil in paying quantities from either section under the one lease in effect on June 24, 1925, or any other lease executed within twenty-five years thereafter, would have prevented termination of the interest conveyed by either of the June deeds. Said deeds did not provide that the interest conveyed should continue as long as there was production from the *section* described in one deed, but as long as there was production under the *outstanding lease* or any other *lease* executed within twenty-five years. The one outstanding lease covered both sections. "Any other lease" evidently referred to a lease of the same land covered by the existing lease, that is, the two sections.

The correction deed of November 24, 1925, which, among other things, made it clear that royalty instead of minerals was conveyed, provided, "It is understood and agreed, however, that this *deed* shall remain in force for a period of twenty (20) years and as long thereafter as oil, gas and other minerals is produced *on said lands* in paying quantities." The correction deed purports in one instrument to convey one-half the royalty in both sections and provides that such deed shall remain in force for twenty years and as long thereafter as oil is produced "on said lands" in paying quantities. "Said lands" had just been

defined in the preceding sentence of the same paragraph as Sections 34 and 39. There being one lease of the two sections, the language of the June deed and the correction deed, considered either together or separately, compel the conclusion that it was intended that production under one lease or on either section continued the grant as to both sections. We conclude that the correction deed, considered either alone or with the June deeds, provided for a continuance of all the royalty interest by production from either section.

In Southland Royalty Company v. Humble Oil & Refining Co., 151 Tex. 324, 249 S.W.2d 914, 915, 916, the land owners executed a deed conveying half the minerals in certain tracts for twenty years and as long thereafter as minerals were produced " 'from said land' ". Subsequently, such land owners and the grantee in the mineral deed jointly executed a lease, which included in the land embraced in said mineral deed and other land owned only by said land owners, and oil was produced from wells located on such other land of the land owners within twenty years and production continued after the twenty year period. It was held that ownership of the minerals conveyed by said term mineral deed was continued beyond said twenty year period by production of oil on the other land owned by the landowners but jointly leased with that embraced in the mineral deed. Judge Calvert in discussing the consequences of a unitized lease as between the lessor and lessee said, "in the absence of express agreement to the contrary, [the legal consequences] are as follows: the life of the lease is extended as to all included tracts beyond the primary term and for as long as oil, gas or other minerals are produced from any one of the tracts included in the lease * * *." In Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472, the several owners of separate contiguous tracts each executed a separate lease describing all the tracts in a unitized block. Our Supreme Court held that the lease constituted but one contract and that by so executing the several leases on the different tracts in the block the several lessors pooled their respective tracts under one lease and the effect thereof was to vest all lessors with ownership of the royalty in such block in the proportion which their acreage bore to the total acreage in the block. In Veeder Co. v. Pan American Production Co., 205 La. 841, 18 So.2d 314, Veeder and the owners of other tracts executed a joint lease of their respective lands, which were separately described. It was held that development of one tract, owned by only one of the joint lessors, continued the lease in effect as to all the tracts under a provision that the lease was to remain in effect as long as minerals were produced "from said land." See also A. Veeder Company, Inc., v. Pan American Production Company, 205 La. 599, 17 So.2d 891, 895; Summers Oil & Gas (Permanent Edition), Vol. 2, page 131, Sec. 295; Garza v. De Montalvo, 147 Tex. 525, 217 S.W.2d 988, 991; French v. George, Tex.Civ.App., 159 S.W.2d 566 (WR); Humble Oil & Refining Company v. Harrison, 146 Tex. 216, 205 S.W.2d 355, 360, and Hillegust v. Amerado Petroleum Corp., Tex.Civ.App., 282 S.W.2d 892. We think the reasoning of said decisions compel the conclusion announced. The judgment is reversed and judgment is rendered for appellants. (Italics throughout the opinion are the court.)