J. V. POLK et al., Appellants,

v.

George B. RICE et al., Appellees.

No. 3468.

Court of Civil Appeals of Texas.

Eastland.

July 10, 1959.

Rehearing Denied Sept. 4, 1959.

Tom Gordon, Abilene, Garland Casebier and Frank C. Ashby, Midland, Harris, Anderson, Henley & Rhodes, Dallas, Cantey, Hanger, Johnson, Scarborough & Gooch, Fort Worth, for appellants.

Hardwicke, Haddaway & Pope, Fort Worth, for appellees.

GRISSOM, Chief Justice.

In 1950, Mrs. DePrange executed an oil and gas lease on 374 acres to A. M. King. In 1951, King assigned the lease to Griswold, reserving a production payment of $37,400 "to be paid out of $\frac{1}{16}$ of $\frac{7}{8}$ of the first oil and gas produced from said" 374 acres. In 1952, Griswold assigned the

lease, insofar as it covered a certain 160 acres out of the 374-acre lease, to the Mabees. In January, 1953, Griswold reassigned said lease to King, excepting the lease on the 160 acres assigned to the Mabees. In January, 1953, King assigned the lease on said 214 acres reconveyed to him by Griswold to Chicago Corporation, reserving an overriding royalty of 1/16th of 7/8ths of the oil and gas produced from that 214 acres. This assignment recited that the royalty therein reserved by King was "the only burden against the leasehold estate * * * assigned and * * * this assignment is made free of any * * * oil payment heretofore created on the leasehold estate." In May, 1953, King assigned the $37,400 production payment to L. L. Shell. This assignment recited that King conveyed said oil payment *"under the said 160 acres* in and to and of the above described oil, gas, and mineral payments, as provided for (in) the * * * assignment" from King to Griswold. (Emphasis ours.) It contained a general warranty. Shell conveyed portions of said oil payment to several persons, including Mrs. Lula Horne Rice. In April, 1952, the Mabees had assigned the oil and gas lease on the 160 acres to Rice et al., which assignment was duly recorded on May 7, 1952.

This suit was filed by George B. Rice and others who own the Mabee lease on the 160 acres. They sought a judgment declaring that the production payment of $37,400 reserved by King in his assignment of the 374-acre lease to Griswold had been discharged and terminated as to the Mabee 160 acres. They alleged that the proceeds of 1/16th of 7/8ths of the first oil and gas that had been produced from the entire 374 acres then amounted to $37,400. This was answered by Polk and others, who owned various interests in the $37,400 oil payment. They contended they were entitled to collect the entire $37,400 production payment out of oil and gas produced from the Mabee 160-acre tract. The undisputed evidence showed that the proceeds from said frac-tion of the first oil and gas produced from both the 160 acres assigned to the Mabees and the 214 acres assigned to Chicago was slightly less than $37,400. Judgment for the difference was rendered against the owners of the 160-acre Mabee lease. The effect of the judgment was to hold that said production payment was payable out of said fraction of the first oil and gas produced from the entire 374-acre tract and that, there being production from the 214 acres before the revenue from said fraction of the first oil and gas produced from the 160 acres was sufficient to pay the production payment, the entire payment could not be enforced against the Mabee 160 acres.

■ Polk and other owners of the production payment, who sought to collect the entire $37,400 from the 160-acre Mabee tract, have appealed. They contend, among other things, that the judgment was an apportionment of the production payment between said two tracts. Such was not the effect of the judgment, although the results may have been approximately the same. The judgment simply carries out the terms of King's reservation of the production payment. Said reservation provides that the $37,400 is payable out of 1/16th of 7/8ths of the first oil produced from the entire 374 acres. Such was the effect of the judgment. After the rights of the Mabees were fixed and of record, Griswold reconveyed to King all of said lease except that on the Mabees' 160 acres. King then assigned the lease on said remaining 214 acres to Chicago Corporation. In King's assignment to Chicago he reserved an overriding royalty of 1/16th of 7/8ths of the oil produced from that 214 acres. The assignment recited that King's reserved overriding royalty was the only burden on the "leasehold estate hereby assigned" and that it was assigned free of any oil payment theretofore created on the leasehold estate. We are not called upon to decide and, therefore, do not determine the effect of this agreement as between King and Chicago. However, we must hold that King

could not thus adversely affect the previously fixed rights of the Mabees and their assigns to have the production payment discharged by the proceeds of ⅟₁₆th of ⅞ths of the first oil and gas produced from the entire 374 acres.

In Cockrell v. Texas Gulf Sulphur Co., 157 Tex. 10, 299 S.W.2d 672, 676, Judge Griffin, speaking for our Supreme Court, said:

"It is clear that Mrs. Sergent and her grantee could not make a contract for royalty payments which would affect the rights of previous purchasers from Mrs. Sergent, not parties to such contract."

In Grelling v. Allen, Tex.Civ.App., 218 S.W.2d 896, 898, (R.N.R.E.), it was held that "The lessor by subsequent deeds or contracts could not burden his lessee beyond the provisions of his lease." See also Hoffman v. Magnolia Petroleum Co., Tex. Com.App., 273 S.W. 828, 830; Cain v. Neumann, Tex.Civ.App., 316 S.W.2d 915, 918; Sayles v. Owens, Tex.Civ.App., 161 S.W.2d 542, 548, (Ref. W.M.); 20 Tex. Law Review 281, 283; Summers Oil & Gas, Perm.Ed. Vol. 3, p. 632. That part of the judgment which, by awarding a small additional sum against the owners of the Mabee 160-acre lease, has the effect of declaring said oil payment, as to the 160-acre Mabee tract, discharged and terminated, is affirmed.

 Shell assigned an undivided ⅛th interest in $30,000 of said oil payment to Lula Horne Rice, to be paid only out of production from the Mabee 160-acre lease. If the part of the judgment affirmed is correct, there was a breach of warranty and a partial failure of title and Mrs. Rice is entitled to recover damages. However, without any proof of an actual loss, or of the amount she paid Shell, judgment was rendered for the difference between the amount she received from the Mabee lease and the face amount of the portion of the production payment assigned to her by

Shell. This is not the correct measure of damages. Compton v. Trico Oil Co., Tex. Civ.App., 120 S.W.2d 534 (Writ Ref.); 43 Tex.Jur. 613; 12 Tex.Jur. 71; 14 Am.Jur. 580; Cox v. Barton, Tex.Com.App., 212 S.W. 652; Lee v. Watson, Tex.Civ.App., 181 S.W.2d 599 (Ref. W.M.); Morriss-Buick Company v. Pondrom, Tex.Com.App., 131 Tex. 98, 113 S.W.2d 889; Collins v. Atlantic Oil Producing Co., 5 Cir., 74 F.2d 122; Logan v. Elliott, Tex.Civ.App., 61 S.W.2d 157, 158.

All points not discussed are overruled. The judgment for Lula Horne Rice against L. L. Shell is reversed and that part of the cause is remanded, otherwise the judgment is affirmed. Affirmed in part and reversed and remanded in part.