SAVOY, Judge.
The instant case was consolidated for purposes of trial with that of Landreneau et al. v. Humble Oil & Refining Co. et al., bearing docket number 2329 on the docket of this Court, 210 So.2d 345, and a separate decree is being handed down this date.
This is a suit for cancellation of an oil, gas and mineral lease instituted by lessor against lessee. After a trial on the merits, the district court rendered judgment in favor of defendants and against plaintiff, rejecting her demand and dismissing her suit. Plaintiff has appealed.
*342 The oil, gas and mineral lease sought to be cancelled was executed on January 3, 1962, by Agnes Landreneau Fontenot, Se-manthe Vidrine Landreneau, Calvin Lan-dreneau, Gibbons Landreneau, Annabelle Landreneau and Charles Landreneau, as lessor, in favor of Warren L. Brown, as lessee, and subsequently assigned to defendants herein. This lease covers three separate non-contiguous tracts of land. Mrs. Fontenot, the appellant herein, owned no interest in the tract listed as No. 1 in the lease description, but owned a one-half interest in the tracts designated Nos. 2 and 3. Mrs. Fontenot prayed for cancellation of the lease as to all three tracts, and alternatively, for cancellation as to her interest in tracts 2 and 3 only. Appellants, under docket number 2329 being referred to as the heirs of Adraste Landreneau, are the owners of all of tract 1 and a one-half interest in tracts 2 and 3, and they prayed for cancellation of the lease as to all tracts. The basic facts have been agreed upon by stipulation. Thus, with minor exceptions, the questions before the Court are of law rather than fact.
On December 9, 1962, lessees commenced drilling a well which was completed as a shut-in gas well on February 9, 1963. In accordance with the terms of the lease, within ninety days from the date on which the well was shut in, lessees deposited the correct amount of shut-in royalty payment, to the credit of all lessors, in the bank designated by the lease, sufficient to maintain the lease until its next anniversary date. Two well tests were made. One in February and the other in May of 1963. Since the lease did not indicate the interest owned by lessors in the several tracts, a letter was obtained by lessees from Mrs. Fontenot and her husband stating that they owned no interest in tract 1 on which the well is situated, and did not intend, by joining in the execution of the lease, as lessor, to communitize or pool their share of the royalties payable with the other parties executing said lease as lessor. Based on this letter, lessees paid the production royalties from the two tests to the owners of tract 1 individually. A conservation unit was created effective August 1, 1963, and production began on September 4, 1963, and has continued since without interruption.
Mrs. Fontenot’s primary contention is that the lease is not a joint or community lease, and production from tract 1 in which she owned no interest, did not maintain the lease as to her interest in tracts 2 and 3, therefore, the lease terminated by the failure to pay the annual rental due on January 3, 1963, and in support of this position, plaintiff cites several inapposite cases as authority for her position.
Defendants argue that although the letter from plaintiff and her husband may show that a joint community lease was not contemplated as between lessors, the lease was a joint or community lease as between lessor and lessee, under the terms of the lease and the law of this State.
The primary issue is whether the lease is a joint or community lease as between the lessee and lessor.
The lease is on a standard lease form commonly used in Southwest Louisiana. It. declares that the lessors are to be “herein called lessor- (whether one or more)”. It states that “lessor” for a stated consideration leases to lessee the land described as follows, to-wit: “132.8 acres in three tracts”, after which the three tracts are described in detail. It further provides that on or before one year from date, the lease shall terminate unless lessee “commences operations for the drilling of a well on the land”, or pay rental “for all” or part “of the land” which lessee elects to continue to hold. The lease does not specify the interest owned by the various parties.
The law is well settled that where several lessors, owning different interests in separate tracts, join in a single lease which describes all of their property and gives a total acreage figure for all of the different tracts, the lease is considered a joint lease as between lessee and lessor *343 Nabors v. Producers’ Oil Co., 140 La. 985, 74 So. 527, L.R.A.1917D, 1115 (1917); Ardis v. Texas Co., 155 La. 790, 99 So. 600 (1924); United Gas Public Service Co. v. Eaton (La.App., 2 Cir., 1934), 153 So. 702; A. Veeder Co. v. Pan American Production Co., 205 La. 599, 17 So.2d 891 (1944); and Farrell v. Simms, 209 La. 1072, 26 So.2d 143 (1946).
Plaintiff has apparently confused the joint lease as between lessors, and the joint lease as between lessor and lessee.
The above cited cases make it clear that regardless of the severabilities of the lease as between the lessors, it is joint “quoad the lessee” and those holding under him.
The letter signed by Mrs. Fontenot, referred to above, related only to the severa-bility of the lease as between lessors. It did not concern or affect the joint or community status of the lease as between lessor and lessee. See United Gas Public Service Co. v. Eaton, supra, 153 So. at page 707, wherein the court said:
“ * * * and regardless of its ownership being severable as between the lessors, it is joint quoad the lessee and those holding under him. * * *.”
We find the case before this Court to be very similar to the case of A. Veeder Co. v. Pan American Production Co., supra. There, several lessors with separate ownerships in a number of tracts joined in one lease which described all of the tracts, without specifying the interest owned by the various parties. However, the lease description was later amended, and the separate ownership in the various tracts was set out. At the time the amendment was made, specific provisions were included for payment of royalties to the respective owners of the land from which the royalties might be produced. A well was drilled and completed on one of the separately owned tracts within the primary term of the lease, and suit was brought by one of the lessors having no interest in that tract seeking the cancellation of the lease as to the tracts owned by him. Beginning on page 894 of 17 So.2d, the court said:
“A reading of the original lease shows beyond question that it was a joint lease as to both grantors and grantee. It was a joint lease in the true sense. The A. Veeder Company, which is a corporation, and the several individuals who, with the corporation, owned all of the land covered by the lease, all of whom were called ‘“Grantor” (whether one or more)’, acted as one in granting the lease; they acted unitedly; they bound themselves together as one individual; what one did each and all did. The land covered by the lease was treated as one tract. The recitals and declarations in the lease were not made by the corporation and the individuals separately; they were made unitedly and as one. Acting unitedly and as one, what they, in effect, said to the lessee was that, if he or his assigns should succeed in producing minerals ‘on the land’ in paying quantities, his ‘rights shall (should) remain in effect so long as any of such minerals are (were) produced in paying quantities from the land’. ‘The land’ referred to was the land covered by the lease — not a part of it, but all of it. This was clearly the intent of the parties, as shown by various clauses and phrases in the lease, one of which recites that the grant should terminate on a certain date unless, on or before that date, the grantee should elect by written notice to the grantors ‘to either drill a well on some part of the land embraced herein’ or pay grantors a certain sum of money on a certain date. The phrase ‘on some part of the land embraced herein’ clearly means that the development of any part of the land for minerals would perpetuate the lease as to each and every portion of the land covered by the contract. The land covered by the lease was described first as one large tract of 1336.29 acres, which large tract was subdivided for the purpose of description into 12 smaller tracts. The contract repeatedly refers to the property involved as ‘the land’, and, in *344 speaking of minerals, it refers to the minerals ‘in the land’ or ‘on the land’.
“The lease provides also that, if a well producing as much as 200 barrels of oil per day for 30 consecutive days is brought in on adjacent land and within 200 feet ‘of any line of the land, then held hereunder’ (meaning, of course, any of the land held under the lease), then the grantee should with reasonable promptness begin, and with reasonable diligence prosecute, ‘the drilling of a well on the land, then held hereunder’. The phrase ‘within 200 feet of any line of the land’ necessarily means the line of any tract of the. land, and the phrase ‘prosecute the drilling of a well on the land, then held hereunder’ necessarily means the drilling of one well on any portion of the land. It is provided in the lease that the delay rentals ‘may be made to Grantor personally or by mailing at Houston, Texas, on or before the due date of the payment letter addressed to the St. Mary Bank and¡ Trust Company of Franklin, La. (or its successor), Grantee’s check with instructions to such bank to deposit same to Grantor’s credit; such bank being hereby constituted Grantor’s agent’. The delay- rentals were payable in one lump sum to the lessors.”

“This agreement, like all conventional contracts, must be construed as a whole, and the intent of the parties is to be ascertained by what is contained within the four corners of the instrument. A reasonable interpretation of this agreement is, we think, that all parties thereto intended that production from any portion of the land would perpetuate the lease as to every portion of the land as long as production continued in paying quantities. The land covered by the lease was leased as a single tract, and the parties are bound by the contract.”
We are of the opinion that the subject lease was a joint lease as between lessor and lessee, and, therefore, payment of the rental on January 3, 1963, was not required since plaintiff’s interest in tracts 2 and 3 was held by production from tract 1. And, since the lease was not joint or communitized between lessors, no royalty was due plaintiff from tract 1 since she disclaimed any interest therein and owned no interest therein.
The fact that the various tracts described in a lease are contiguous or non-contiguous creates no distinction in the jurisprudence in concluding that the lease is joint quoad lessee.
Plaintiff argues that the trial court erred in failing to consider the parol evidence showing that the lease was not a joint lease. In support of this argument plaintiff cites only authorities dealing with the admissibility of parol evidence relating to the severability of the lease only as between lessors. This Court has concluded that the language of the lease in this case clearly establishes that it is a joint lease as to the lessee. Plaintiff has failed to produce any authority permitting parol evidence to establish the severability of a lease as between lessor and lessee, where the language of the contract clearly indicates that the lease is a joint or community lease as between lessor and lessee.
We find no basis for plaintiff’s argument of insufficient consideration or cause to support the joint lease. Nor do we find any merit to plaintiff’s alternative argument that the lease was void as to plaintiff because she signed it because of an error as to the nature of the contract. The record reflects that Mrs. Fon-tenot consulted with her nephew, Mr. Calvin Landreneau, who is the Mayor of Ma-mou, and has had considerable experience dealing in oil matters, and that she fully understood the nature and object of the lease contract.
Finally, plaintiff argues that the district court erred in failing to find that the unit created by Conservation Order No. 637 had expired one year from the ef *345 fective date of the order and ,that the Commissioner of Conservation was powerless to issue an order with retrospective effect. The answer to this argument lies in the Commissioner’s order itself which provides in Paragraph 7 that the units created shall remain in full force and effect unless and until revised and modified by formal order after public hearing.
This Court concludes that the record is clear that defendants have complied with all the terms of the lease of January 3, 1962, have made all payments called for correctly and timely, have operated the property diligently and in good faith, and that no grounds exist for cancellation of the lease.
For the reasons assigned, the judgment of the trial court is affirmed at appellant’s cost.
Affirmed.